Mayor, etc., of Rome *vs.* McWilliams & Company *et al.*

MAYOR AND COUNCIL OF THE CITY OF ROME, plaintiff in error, *vs.* MCWILLIAMS & COMPANY *et al.*, defendants in error.

52 251
89 642
52 251
109 89

1. The act of February 17th, 1874, authorizing the mayor and council of the city of Rome to require the registration of, and to assess and collect a license fee from all persons, firms, companies and corporations, engaged in any business, trade, calling or profession within the corporate limits of the city is not unconstitutional.

2. Nor are the ordinances of the city passed in pursuance thereof illegal or void, provided they do not assess such license fee on those who by express legislation are not subject to the same; and, provided, it is limited to such business, trades, callings or professions, as are fixed and regular, and dependent on the public for patronage and support; or provided it does not extend to those pursuits or occupations which require only manual labor; and provided, further, that not more than one such fee is required of any firm, or the persons composing the firm, which is engaged in any business liable to pay the same.

3. The power of the mayor and council to assess and collect the license fee, is not limited to such business, trades, callings or professions, as are specified in the 2d, 3d and 4th paragraphs of the first section of said act, but under the first and fifth paragraphs thereof they may collect the same from all who come within the rule as stated in the preceding note of this syllabus.

4. The first section of the act giving authority to the mayor and council to levy a tax not exceeding one per cent. on the gross sales made by registered persons, firms, etc., is not in violation of the last clause of the 27th section of the first article of the constitution of this state, nor is the ordinance illegal and void which assesses a tax of one-half of one per cent. on such sales, and allows a deduction from the sales of the amount of stock on which a tax has been levied.

5. The registration fee allowed by the ordinance to the clerk of the city council, is not illegal; as the same added to the license fee which has been assessed, does not exceed the amount which, under said act, the mayor and council are authorized to levy.

6. Under the eighth section of said act the mayor and council have authority to impose a fine on such persons as are required to make returns of their sales, or to register, and take out license, for failing or refusing to make such returns, or for failing to take out such license.

Constitutional law.   Tax.   License.   Municipal corporations.   Fine.   Before Judge UNDERWOOD.   Floyd county. At Chambers.   March 20th, 1874.

McWilliams & Company *et al.*, merchants, S. Holmes *et al.*, clerks, John W. Janes, physician, R. I. Hampton, dentist, Benjamin Burns *et al.*, contractors and mechanics, Halstead Smith *et al.*, lawyers, William A. Reckling, photographer, Woodruff & Morgan *et al.*, cotton buyers, A. S. Caldwell, insurance agent, John C. Printup, railroad agent, and J. J. Vandiver, coal seller, all residents of and doing business in the city of Rome, filed their bill against the mayor and council of said city, making the following case:

Your orators charge that the mayor and council of the city of Rome, under and by virtue of an ordinance passed on the 11th day of March, 1874, and an amendment thereto, passed by said body on the 13th day of March, 1874, require each and all of your orators, on or before the 17th day of March, 1874, to register their names, business or occupations, in the office of the clerk of the city council of said city, and to pay to the said clerk a fee of fifty cents for issuing a license to each of your orators, and to pay the following sums for license to follow their respective occupations in said city, viz:

Merchants, traders, factors, commission merchants, or those engaged in selling goods, wares, produce or merchandise, whose average stock in trade is under $1,000 00, ... ... ... ... $10 00
From $1,000 00 to $10,000 00, ... ... ... ... ... ... ... ... 20 00
From $10,000 00 to $25,000 00, ... ... ... ... ... ... ... 30 00
All those averaging over $25,000 00, ... ... ... ... ... ... ... 50 00
Contractors, ... ... ... ... ... ... ... ... ... ... ... ... 25 00
Clerks, book-keepers and railroad and steamboat ticket agents, insurance agents and telegraph operators, receiving a salary or wages of $600 00 per annum, or under, ... ... ... ... ... 5 00
And those over $600 00, ... ... ... ... ... ... ... ... ... 10 00
Cotton buyers, each, ... ... ... ... ... ... ... ... ... ... 25 00
Coal yards or agencies, ... ... ... ... ... ... ... ... ... 25 00
Ice houses or agencies, ... ... ... ... ... ... ... ... ... ... 10 00
Lumber merchants, ... ... ... ... ... ... ... ... ... ... 20 00

That said mayor and council, in addition to said license taxes, have also levied a tax of one-half of one per cent. upon the gross sales of all merchants and commission merchants in

said city, and require returns of said sales to be made quarterly.

That said mayor and council, by said ordinance, require all artists, photographers, agents, lawyers, doctors and dentists, to make a quarterly return of their gross receipts, and to pay a tax of one-half of one per cent. thereon, the first quarter beginning on the 1st day of January, 1874, and ending on the 1st day of April, 1874; and insurance agents are required by the like authority to make like quarterly returns of their receipts, and to pay a tax of one-half of one per cent. upon their gross receipts.

A copy of said city ordinance is hereto attached, and marked exhibit "A."

That said license and special taxes imposed upon your orators, and said taxes on gross receipts and on the gross sales of your orators, are unequal, unjust, not uniform, and that said taxes are imposed without authority of law, and that the said mayor and council have no authority to levy and collect the same.

That the said mayor and council have exempted from the payment of said license and registration taxes, and from the payment of said tax on gross sales and receipts, all carpenters and mechanics, and all other citizens not included in said ordinance; and that said exemption is unjust and illegal, and renders said taxes void, because not equal and uniform on all the citizens of said city.

That said license taxes and fees are not taxes upon property, and are neither *ad valorem* nor uniform, and are contrary to law, illegal and void; and that said tax of one-half of one per cent. upon the gross sales and receipts of your orators is an additional tax to the *ad valorem* tax upon your orators' property in said city, and is not an uniform nor *ad valorem* tax, and that no tax is imposed upon the gross sales or receipts of mechanics and other citizens of the city, and that said tax upon the gross sales and receipts of your orators is illegal and void.

That under and by virtue of the said pretended ordinance,

the said mayor and council have required your orators to make returns by the 1st day of April, 1874, or within ten days thereafter, of all the sales made by your orators, and also of all their receipts since the 1st day of January, 1874, and to pay a tax of one-half of one per cent. upon said receipts and sales.

That they are ready and willing to pay all the taxes that may be legally imposed by said mayor and council upon all real and personal property owned by your orators in said city, when said taxes are assessed upon their said property *ad valorem*, uniformly, and equally, on all the property in said city, and do hereby tender and offer to pay the same in manner and form as aforesaid.

That the said mayor and council have enacted an ordinance whereby they threaten, notwithstanding the protest of your orators, to enforce the payment of all said illegal taxes and fees by issuing *fi. fas.* against the property of your orators, and selling the same, and also to inflict fines, penalties and forfeitures upon them for failure to pay said illegal fees and taxes, as will appear by reference to exhibit "A."

That if said mayor and council are permitted to enforce the payment of said taxes, licenses and fees, it will ruin the business of your orators, and will inflict irreparable injury upon them; that many of your orators are poor men and will be compelled to abandon their business in said city if their business is burdened with said excessive, unequal, unjust and illegal taxes, license fees, fines and forfeitures.

That the enforcement of said illegal taxes and fees, fines and forfeitures, will cast a cloud over the title of your orators to their real estate owned in said city; and that if said tax *fi. fas.* are issued, and said fines are imposed by the said mayor and council, it will give rise to a multipicity of law suits between your orators and other citizens of said city and the said mayor and council. Wherefore, they pray the writ of injunction.

The bill was subsequently amended as follows:

And your orators do charge that each cotton buyer is re-

quired by said ordinance to pay said license tax. That your orators, Frank Woodruff and Samuel Morgan, are partners, carrying on the business of cotton buying in said city, under the name and style of Woodruff & Morgan, and that said mayor and council require each of your orators to pay a license, and will not issue a license to the firm of Woodruff & Morgan, but that said defendant issues a license to firms or merchants, contractors and others, upon the payment of a single license fee by said firms, and that said defendants do not require a separate license fee from the members of firms engaged in other business, and that said discrimination renders said license tax unequal, unjust, illegal and void.

Your orators further charge and show unto your honor that there is located in said city a rolling mill, which manufactures annually a large amount of iron, nails, spikes, and railroad iron, and sells the same; a foundry and machine shop, and a stove and hollow-ware manufacturing establishment, manufacturing and selling large quantities of stoves, car wheels and axles, and other iron products; a mill manufacturing and selling large quantities of meal and flour; a shoe factory and furniture manufactories, all manufacturing and selling annually in said city large amounts of manufactured articles, and that by said ordinance, as amended since the filing of this bill, no tax is imposed upon the sales of said manufactured articles when sold by the said manufacturers, and that said exemptions from the tax of one-half of one per cent. imposed upon the gross sales of your orators, who are dealers and merchants, are unjust, unequal, illegal and void.

(EXHIBIT "A.")

" TAX ORDINANCE.

" The ordinance committee submitted the following ordinances, which were read three times and unanimously adopted, by section:

"SECTION 1. *Be it ordained,* That for the ordinary current expenses of the city government for the year 1874, there shall be levied an *ad valorem* tax upon all real and personal prop-

erty within the corporate limits of the city of Rome of one-half of one per cent.; the tax upon realty to be levied upon its assessed value, and one-half of the same be called for and made payable on or before the 25th day of this month, the other half to be required and made payable on or before the 25th day of September next.

"*Be it further ordained,* That all owners of personal property subject to taxation shall be required to make return thereof on or before the 15th day of April next, the amount and value of said property to relate to the 1st day of April, and the tax upon the same shall be one-half of one per cent. *ad valorem,* one-half of which shall be called for and made payable on the 25th day of April, and the other half on the 25th day of October next.

"SECTION 2. *Be it further ordained,* That for the purpose of paying the interest on the public debt, and the $5,000 00 of the principal of bonds which mature in September next, and also for paying the balance of the floating debt of 1873, all being extraordinary expenses, there shall be levied upon all the real and personal property subject to taxation in said city an *ad valorem* tax of one per cent.; one-half of the tax upon the assessed value of the realty payable on the 25th of this month, (of March,) and the other half payable six months thereafter; the personalty to be returned on or by the 15th day of April next, and one-half the tax thereon payable on the 25th day of April, and the other on the 25th day of October next.

"SECTION 3. *Be it further ordained,* That in addition to the *ad valorem* taxes required in the foregoing, there shall be levied for extraordinary expenses, to provide for payment of the public debt, a tax of one-half of one per cent. upon the gross sales of all merchandise, sold on commission or otherwise, in said city, said sales to be returned under oath quarterly, and payable, when returned, on the first days of April, July, October and January, and covering the three months preceding the return. But the collector, in making up the amount due on each quarterly return, shall deduct from the

return one-fourth of the value of merchandise given in by the tax-payer as being on hand the first day of April, 1874, and collect the said one-half of one per cent. upon the remainder.

"The term merchandise, in this section, shall include all goods, wares, products, produce, lumber, and materials of every description except cotton, held for sale by registered merchants or dealers.

"Section 4. Non-resident itinerant or transient traders in produce, merchandise, or stock of any kind, shall be required to pay in advance one and one-half per cent. upon the value of the property held and offered by them for sale, and shall, in addition, register their business and pay license therefor, and shall pay on their sales one-half of one per cent. when called on by the city marshal : *Provided, however,* that when such persons employ a registered merchant, agent or dealer, to make sales for them, they shall not be required to take out license, and such registered merchant, agent or dealer, shall make return of said sales in his quarterly returns, and pay thereon only the tax of one-half of one per cent.

"Section 5. All companies, firms, corporations or persons hereinafter named, carrying on a registered business, or who are required to register their business, shall pay one-half of one per cent. upon their gross receipts, the same to be returned under oath, and payable quarterly on the first days of April, July, October and January, for the preceding quarter. Gas companies, artists, photographers and others ; agents not specially mentioned ; warehouses, hotels, lawyers, doctors and dentists, insurance agents, and auctioneers, shall pay a tax of one-half of one per cent. upon the gross amount of their sales, to be returned and paid in like manner.

"Section 6. All persons coming into the city for the purpose of vending patent medicines, exhibiting or selling patent rights, or pursuing any business or calling not enumerated in existing ordinances, shall, before doing so, apply to the mayor, and at his discretion the tax shall be rated.    The

clerk shall then issue the license; but in no case shall the rate be less than $10 00.

"SECTION 7. For the purpose of keeping the streets and drains of the city in good condition and repair, there shall be required, during the year, nine days' labor of each male inhabitant between the ages of sixteen and fifty, or in lieu thereof an annual tax of six dollars, one-half payable 25th day of April and the other half the 25th day of October; which tax shall be in commutation of their manual labor upon the streets of said city."

The following ordinances and rates of registration and license, as amended and corrected by council, are published for the information of all concerned:

"SECTION 1. *Be it ordained by the mayor and city council,* That every person, firm, corporation or company engaged in prosecuting or carrying on any trade, business or profession, within the corporate limits of said city, is hereby required to register their names, business, calling, trade or profession, annually, at such times as the mayor and council may, by resolution, from time to time, direct; any persons coming into the city, and so engaging in business, after that date in each year, shall so register within ten days after commencing such business, calling, trade or profession, and pay for and procure his business license.

"SECTION 2. No license issued by the clerk of council to any person, firm or corporation, shall be valid or sufficient until the same shall be countersigned by the mayor of the city, and registered by the clerk in a book to be kept for that purpose: *Provided,* that nothing herein contained shall invalidate any license heretofore granted, until the time for which the same has been issued expires.

"SECTION 3. Any person liable to be so licensed, who shall fail to take out such license, after the clerk has given ten days' notice of his readiness to issue license, may, on conviction, be fined in a sum not exceeding $50 00 and costs.

SECTION 4. *Be it further ordained,* that all persons, firms or corporations, engaged in any business, trade or occupation

specified below, in the city of Rome, shall be required to register their various business, trade or occupation, and obtain a license, for which he, she or they, shall pay the amount hereafter set opposite such business, trade or occupation, in addition to a clerk's fee of fifty cents, to be due and payable on the 17th day of March, 1874, and ending twelve months from that date.

      *          *          *          *

"Section 5. *Be it further ordained,* That all persons, firms, corporations or companies doing business, of any description or character whatever, in said city, who are required to register and pay the license therefor, failing or refusing to register by the 17th day of March, 1874, shall pay. a double registry tax, and the clerk of council shall issue an execution therefor, which shall be collected by the marshal as other tax *fi. fas.* All persons, firms, corporations or companies, coming into the city after the 17th day of March, 1874, for the purpose of doing business in said city, are required to register and take out a license before commencing business, and on failure to do so, shall be subject to the penalties imposed by this section.

"Section 6. All persons who have been licensed by the state or its authority to pursue or practice their callings shall not be required to take out license, but the tax above specified shall be collected from them."

### AMENDMENT OF MARCH 13TH, 1874.

On motion, the two following paragraphs were added to the registration license:

"Street brokers,  ... ... ... ... ... ... ... ... ... ... $20 00
Apothecary,  ... ... ... ... ... ... ... .. ... ... ... 10 00."

The ordinance committee submitted the following, amendatory to the tax ordinance, which being read three times, was adopted:

"Section 8. *Be it further ordained,* That any person or firm, failing or refusing to make the quarterly returns of sales or receipts as required by law, shall be deemed guilty of having violated the ordinance requiring the same, and shall be liable to pay a fine of fifty dollars for each failure.

"SECTION 9. *Be it further ordained,* That the oath to be administered to persons making their quarterly returns of sales or gross receipts, shall be in the following words: 'You do solemnly swear or affirm, according to the mode of your faith, that the return you have just made is a just and true return of your sales (or receipts, as the case may be,) for the past quarter.'

"SECTION 10. *Be it further ordained,* If any person, firm or corporation, shall fail or refuse to make a return of their sales, earnings or receipts, as required above, within ten days after the first day of April, July, October and January, it shall be the duty of the finance committee to assess the amount of such business in such sum as they may deem just, and if any person, firm or corporation, shall make a return that, in the judgment of the finance committee, is considerably less than should be returned, the committee shall assess such amount as they may deem just, and if the party so assessed shall object to said assessment, they may produce their books and the whole matter be referred to council for their determination."

The defendant answered as follows: It is true that the mayor and council of Rome, in pursuance of the power and authority granted to it by the general assembly of the state of Georgia, on the 17th day of February, 1874, by way of amendment to its charter, a copy of which act is hereto attached, marked "A," passed the ordinance referred to in complainants' bill, by which the said complainants are required to register their names, business, calling, trade or profession, on or before the 17th day of March 1874, which has been extended five days by a subsequent resolution of this defendant. It is also true that a fee of fifty cents is required to be paid to the clerk for making such registration, and that the complainants are respectively required to pay the tax on their occupation or business, after so registering, as stated in said bill, except that, that portion of said ordinance requiring lawyers, physicians, dentists and photographers, to pay said tax has been and was repealed prior to the filing of said bill,

and in deference to the construction put by this defendant on the 11th section of the general tax act of this state, passed on the 26th of February, 1874, and which prohibited such a tax.   It is also true that this defendant, by virtue of said act of the legislature of Georgia, hereinbefore referred to, have levied a tax of one-half of one per cent. on all gross sales of all merchants and commission merchants doing business in said city, and require returns of such sales to be made quarterly. That said ordinance is a general law, and was not intended to be retroactive, and that since the filing of complainants' bill, this defendant, by resolution, has disclaimed all purpose to collect any such tax on gross sales, made prior to the passage of said ordinance, so that the first return for this purpose to be made by complainants will only include their gross sales made between the 11th day of March, 1874, and the 1st day of April of said year.

Since the filing of this bill, defendant has repealed all that portion of said ordinance which requires a tax of one-half of one per cent. upon incomes of lawyers, doctors, dentists, artists, photographers, contractors, and upon the receipts or incomes of all persons whatever, except upon gross sales and commission sales.   This defendant respectfully submits that they are fully authorized and empowered to demand and collect the tax upon occupations and upon businesses, and also that it is fully authorized and empowered to collect one-half of one per cent. upon the gross sales and commission sales of all persons doing business within the corporate limits of said city, in addition to the *ad valorem* taxes of one and one-half per cent. levied by this defendant upon all the real and personal property within said corporation.   This defendant further shows, that the value of the stock of complainants on hand, when they are required to return the same for *ad valorem* taxes, is deducted from the sum of their gross sales, so that they are not required to pay tax twice on their stock on hand.

This defendant concurs with said complainants that said tax on occupations and businesses and on gross sales, is not a property tax, but respectfully submits if it were, the levy is

equal, just and uniform.  As to the power of this defendant to pass said ordinances, reference is made to the amended charter hereunto attached, marked "A."

It is true this defendant has repealed that portion of the ordinance which imposed a tax upon the occupation of carpenters, mechanics and other artisans, and that many of said complainants were mainly instrumental in inducing this defendant to make said repeal, and in inciting these classes of citizens to great dissatisfaction because said tax had been levied on them.  This defendant was convinced by complainants and others that it was in error in levying a tax on the occupations of said persons, no other city in the state ever having taxed them, so far as defendant knows or is advised.  Many of said persons are at work in the foundries and rolling mill in this city, and are poorly paid, and the levy of the tax would have been unproductive, and would have driven them from the city.

This defendant has exempted no one within said city, or doing business there, from the payment of the tax required on gross sales or on commission sales, and now insists that all such persons shall be required to pay said tax whatever his business or occupation may be.  It is conceded that said tax on gross and commission sales is not a property tax.  It is submitted that there is no constitutional provision or law against it, or against the tax on occupations or businesses, and that the power to levy these taxes has been clearly granted to this defendant as aforesaid, and that said power has been, and is now being legally exercised.

This defendant submits that the position assumed by complainants, to-wit: that nothing but *real and personal property* is taxable, is not tenable, and cannot be maintained, and certainly ought not to be, for all persons residing or doing business in the city ought to contribute to its support and to the payment of its debts.

The tax on gross and commission sales and the tax on occupations and businesses can ruin no one.  How the enforcement of this ordinance can cast a cloud over the title to real

estate in the city this defendant cannot see.    But if, as complainants insist, the whole burden of the city's debt and expenses is to fall upon real estate, it will so depress its value as to ruin its sale.    This defendant respectfully shows that it is indebted to its several creditors in the aggregate sum of $410,000 00.    That, to meet the ordinary expenses of the city, the interest over-due from last year and accruing the present year, together with $5,000 00 of bonds maturing this year, the sum of $59,000 00 will be required; and it is extremely doubtful whether all the taxes levied will raise that sum.    This defendant has no personal interest, nor has any member of the council, in the questions raised by this bill further than that felt by any good citizen in sustaining the credit and paying the debt which hangs over the city.

Defendant further says, that after the returns of personal property are made, to-wit: the first of April of each year, complainants, who are merchants, usually receive in store, by purchase and consignments, large amounts of goods, wares and merchandise, which are under the protection of the laws, ordinances and police regulations of said city, and also of its water works, and upon which goods, wares and merchandise, no *ad valorem* tax is assessed.    From all such goods said complainants realize fair and legitimate profits—say upon their purchases not less than ten per cent., and upon their consignments not less than five per cent.    This defendant submits whether it is illegal or oppressive to collect from the sales of such property, so protected, so small a rate as one-half of one per cent. upon the sales thereof.

(EXHIBIT A.)

"AN ACT

" *To confer additional powers upon the Mayor and Council of the City of Rome.*

"SECTION 1. *Be it enacted by the General Assembly of Georgia,* That the mayor and council of the city of Rome shall have power and authority: " 1st. To require all persons, firms, companies and corporations, whether they reside within the corpo-

rate limits of said city or not, engaged, or about to engage in any business, trade, calling or profession within said corporate limits, to register their names and business, trade, calling or profession, in the office of the clerk of council, at such time, and under such regulations as the mayor and council may prescribe. 2d. To require all bankers, brokers and commission merchants, to pay for their business license, during each year, a sum not exceeding $300 00.   3d.  To require all retail liquor dealers to pay for their license not exceeding $1,000 00 per annum.   4th. To require all other liquor dealers, including druggists who sell for other than medicinal purposes, to pay for such registration and license not exceeding $500 00.   5th.  To require all other persons to pay for each ·registration and license not exceeding $50 00.   6th.  To require all registered persons, firms, companies and corporations, to make stated returns of the gross amounts of their sales and to pay a tax thereon not exceeding one per cent.   7th.  To require all persons selling goods on commission to make quarterly returns of the amount sold, and to pay a tax thereon of not exceeding one per cent. 8th.  To alter and fix the time for making tax returns and to provide for the collection of taxes quarterly, semi-annually or yearly, and to have the assessment of property made in accordance therewith.

"Section 2. *Be it further enacted,* That the mayor and council of said city shall have power and authority to require all persons residing in the limits of said city, subject to road duty under' the laws of this state, to work on the streets of said city at such times and places as the said mayor and council shall determine, for fifteen days in each year, under the same rules as to the division of said number of days as obtain in the general law of the state, and said mayor and council, or a majority of them, shall have the same authority to enforce said street work as the road commissioners of this state have to enforce road duty in this state, to impose fines for the neglect of the same and to have all the powers over the same as road commissioners have in this state:   *Provided,* That any person so liable to road duty may be allowed to commute

the same by paying the said mayor and council such amount as the mayor and council may determine, not to exceed the sum of $10 00.

"Section 3. *Be it further enacted,* That said mayor and council shall have power, 1st. To require all transient or itinerant traders to pay a tax of not exceeding two per cent. upon the amount of all sales made within the city. 2d. To have assessed the value of all real estate, depots and buildings, tracks and right of way, lying within the city, belonging to each and every railroad company having its terminus in, or passing through, said city, and to collect an *ad valorem* tax thereon: *Provided, however,* That this shall not apply to any railroad company which makes return of its capital stock to said city, and pays the taxes thereon. 3d. To levy and collect an *ad valorem* tax upon the value of each and every steamboat owned or controlled by citizens of said city, plying to and from the city of Rome, which has the chief office of the company within the limits of said city. 4th. To levy and collect an *ad valorem* tax upon the assessed value of each and every toll bridge over the rivers adjacent to said city, and to regulate the management of said bridges so far as to insure the public safety and convenience in crossing the same. 5th. All real estate sold under tax *fi. fas.* for taxes due to the city shall be subject to redemption for one year after sale: *Provided,* the defendant in said *fi. fas.* shall pay the amount of said tax and all costs, and twenty per cent. additional thereon.

"Section 4. *Be it further enacted,* 1st. That said mayor and council shall have power and authority to regulate or prohibit the running at large of cattle, hogs or other animals upon the streets of the city. 2d. To seize, impound and sell, or otherwise dispose of, animals found running at large upon the streets, contrary to said regulations and prohibitions.

"Section 5. *Be it further enacted,* That the boundaries of said city shall extend to and include the southeastern or opposite bank of the Etowah river, and the northwestern or opposite bank of the Oostanaula river, at all points where said rivers are adjacent to said city; but this limitation shall not

militate against the jurisdiction heretofore granted over Myrtle Hill Cemetery, and the road leading thereto.

"SECTION 6. *Be it further enacted,* That the mayor of said city shall have the right to veto any ordinance, resolution or other measure that may come before the council, and said veto shall defeat the same unless it shall be passed by two-thirds of the members thereof. This provision shall not, however, apply to elections of city officers, and in such cases the mayor shall have the right to give the casting vote in case of a tie.

"SECTION 7. *Be it further enacted,* That the mayor and council shall have authority to make and select a board of health, with all the rights, powers and privileges now belonging to that body under existing laws and ordinances, or such as may hereafter be conferred legally by said mayor and council.

"SECTION 8. *Be it further enacted,* That said mayor and city council shall have power and authority to pass all the ordinances, rules and regulations necessary to carry out the provisions of this act, and to enforce the same.

"SECTION 9. *Be it further enacted,* That all laws and parts of laws conflicting with this act be and the same are hereby repealed.

"Approved February 17, 1874."

The chancellor rendered the following decision:

" After hearing argument, and after carefully considering the questions made, which are deemed to be material, I decide as follows: Courts have ever regarded tax laws, or laws imposing taxes, with jealous care, and with reference to the subject matter, they are divided into three classes—capitation, property and income, and when one or more is treated of, or acted upon, the other is never intended. The legislature of this state has omnipotent power over these subject matters, controlled only by the constitution of the United States and of this state. The limitations are briefly: " No state shall levy any capitation tax or tax on exports or imports, except," etc. "Taxation on property shall be *ad valorem* only, and uniform on all species of property taxed."

"The legislature has the power to grant to the authorities of towns and cities the power of taxation for municipal purposes, in subordination to the constitutional limitations.   A municipal corporation cannot exercise the power of taxation, except in pursuance of an express grant or the clearest implication. In the construction of statutes, made in favor of corporations or particular persons, and in derogation of common right, care should be taken not to extend them beyond their direct terms, or their clear import.   Statutes which impose restrictions upon trade, or common occupations, must be construed strictly.   Statutes levying taxes should be construed most strongly against the government and in favor of the citizen.   Revenue statutes are in no just sense remedial laws, and are not therefore to be liberally construed.   All doubts should be resolved in favor of the citizen, and the doubt should absolve the tax-payer.

"The act or law of the general assembly of this state, approved February 17th, 1874, to confer additional powers, etc., confers on the mayor and city council of Rome, in direct terms; power and authority to require a license fee or registration fee of bankers, brokers, commission merchants, retail liquor dealers, and all other liquor dealers, including druggists who sell for other than medicinal purposes, and no express power or authority is conferred in direct terms to require such fee from any other class of persons.

"Express power and authority is also conferred to require all persons, firms, companies and corporations, whether they reside within the corporate limits or not, engaged, or about to engage, in any business, trade, calling or profession within said corporate limits, to register their names and business, trade, calling or profession, in the office of the clerk of council at such time and under such regulations as the mayor and council may prescribe.   The fee of fifty cents to the clerk is a legal and valid regulation.

"The mayor and council have the power and authority to require all persons, firms, companies and corporations thus registered, to make stated returns of the amount of their gross

sales, and to require the payment of one-half of one per cent. levied by the ordinance of the city upon the gross amount of such sales; and this includes all sales made on commission, and have the power to enforce the payment of the tax by fine or execution, or both.

"The tax on the amount of gross sales is not a tax on property, or the sale of property, but is a tax on the amount of sales, and is no way in conflict with the constitution of this state, and does no violence to the *ad valorem* principle or to uniformity.

"In requiring the registration of firms, each member of the firm may be required to register and to pay a license fee, in cases where the power to require such fee is given in direct terms.

"It is therefore ordered by the court that the bill be sanctioned, and that the writs of subpœna and injunction issue, restraining the mayor and council of Rome from levying and collecting a license or registration fee, from any and all persons except bankers, brokers, commission merchants, retail liquor dealers, and all other liquor dealers, including druggists who sell for other than medicinal purposes; and from enforcing the payment of fines for violation of the ordinances by imprisonment, except the street tax. Injunction is refused as to all persons, firms, companies or corporations, of whom license fee is required in express terms, and as to the payment of the tax on the gross amount of sales made by registered persons, or persons expressly required to register, including commission sales."

Complainants and defendant both excepted to the judgment of the chancellor. By agreement of counsel, the cross-bills of exception were consolidated and heard together.

J. BRANHAM; ALEXANDER & WRIGHT, for plaintiff in error.

C. ROWELL; R. R. HARRIS; DABNEY & FOUCHE, for defendants.

TRIPPE, Judge.

1. The act of February 17th, 1874, authorizes the mayor and council of the city of Rome to require the registration of, and to assess and collect a license fee from all persons, firms, companies and corporations engaged in any business, trade, calling or profession within the corporate limits of the city. The objection is that this act is unconstitutional, in that it empowers the city authorities to assess a different rate on some trades, callings, etc., than it does on others, and is therefore, in conflict with that provision of the constitution which requires taxation on *property* to be *ad valorem*, and uniform on all species of property taxed.

It has been held by this court in several cases, that a tax on businesses, professions, etc., was not a tax on *property*. It is unnecessary to do more than to refer to them, without repeating the argument: *Mayor, etc., of Savannah vs. Charlton,* 36 *Ga.*, 460; *Burch vs. Mayor, etc., of Savannah,* 42 *Ibid.*, 596; *Bohler vs. Schneider,* 49 *Ibid.*, 195; *Home Insurance Company of New York vs. City Council of Augusta,* decided at this term. As long ago as 1832, it was held by the judges of the superior courts of this state, in convention, that "every man's private business, pursuit or calling, and things in which he has an interest, and many species of employment, are legitimate subjects of taxation, and are taxed; still, they are not, strickly speaking, property. They are the means from which income is derived, property made, but there is a clear distinction between the employment and the income or profits:" *Dudley's Reports,* 137.

The fact that it is called a license does not affect the case before us, provided the city does not require a license from those who already have one from the state, or by its authority: See *Mayor, etc., of Savannah vs. Charlton, supra.* The ordinance passed under this act which we are considering, provides expressly that "all persons who have been licensed by the state or its authority, to pursue or practice their callings, shall not be required to take out a license," and certain occupations

and professions on which the license fee had been assessed, were afterwards, as appears from the answer to the bill, discharged from its payment.

This difficulty being removed, what is the difference, so far as this constitutional provision is involved, between an act authorizing a license fee to be required from those who engage in business, etc., and an act granting power to tax that same business? Whatever may be said as to the distinction between a tax and a license, neither of them, when they apply to trades, callings and professions, are governed by the *ad valorem* principle, or the uniformity rule, which control only taxation on property.

2. If, then, the ordinances complained of do not assess, as they now stand, such license fee or tax on any who are not subject to the same under the foregoing rule, or by express legislation, they are not illegal or void, provided, further, that they come within the limitation which we think should be set upon all such assessments. Section 29, article 1, of the constitution, prohibits a poll tax except for educational purposes, and limits that to one dollar. McCay, Judge, in pronouncing the opinion in *Burch vs. Mayor, etc., of Savannah,* said "If it (the tax on occupations, etc.,) be objectionable at all to the constitutional limitations, it comes more nearly within the prohibition of section 29, article 1." He further says, "if the legislature were to attempt by taxing *all occupations,* practically to annul the prohibition against a poll tax, the question made might arise. But there is a clear distinction between a tax upon certain specified businesses, where the skill of the operator is a source of profit, or where the public are appealed to for patronage and protection of a fixed and regular business, and a tax covering all persons whatever may be their occupation." This indicates pretty clearly and correctly that there should be a limitation to a tax of this kind. If there be none, then could an ordinance be framed which would practically annul the prohibition against a poll tax, by assessing every one who *worked or did anything* for a living. In the extract from the case in *Dudley's Reports,* this distinction between

Mayor, etc., of Rome *vs.* McWilliams & Company *et al.*

occupations, as to their being proper subjects of taxation or not, was recognized in the statement that "many species of employment are legitimate subjects of taxation." We are aware of the difficulty of prescribing any absolute or fixed rule upon this point. No terms can be used with such definite and specific meaning, that they will answer to and determine every case. But we think that rule is more consistent with principle and true policy, and less liable to conflict with the spirit and intent of the constitutional provision, which limits such tax, to such business, trades, callings or professions, as are fixed and regular, and dependent on the public for patronage and support, or when the tax does not extend to those pursuits or occupations which require only manual labor. Whilst it would prevent the striking down of all revenue from sources which have ever been considered legitimate subjects of taxation, it would, at the same time, be consistent with the intention of the constitution, by not levying *en masse*, though it might be with discriminating rates, on all who engaged in work for gain or maintenance and support, including those who toiled with the axe, the plough and the spade, as well as the banker, the wholesale merchant and the retail dealer in ardent spirits. The further qualification may be added as restricting the exercise of the power to assess this fee or tax, to-wit: that not more than one such tax should be required of any firm or the persons composing the firm, which is engaged in the business liable to pay the same. By this rule the assessment would be relieved of the complaint that it is obnoxious to the charge of imposing a capitation or poll tax. No showing was made in the bill of complainants, or at the hearing for an injunction, that any of those would come within such a rule, and would thereby be exempt from the license tax levied by the ordinance, and we can go no further in this decision than to state the general rule or principle.

3. It was further objected by some of the complainants who did not come within the particular terms of the second, third and fourth paragraphs of the first section of said act, that they were not liable to be taxed with any license fee, because of

the general terms of the fifth paragraph. This position is founded on the rule that it is an established principle of construction that where general words follow particular ones, the former are to be construed as applicable to the things or persons particularly mentioned: Sedg. Stat. and Const. Law, 423; or, as it is expressed by other authorities, where general words follow particular ones the rule is to construe them as applicable to persons or things *ejusdem generis.* We have no dissent to make to this rule. It does not apply to the construction of the statute we are considering. The *first* words of this act are general words, broad and comprehensive; they grant power to the city council " to require all persons, firms, companies and corporations, whether they reside within the corporate limits of said city or not, engaged, or about to engage, in any business, trade, calling or profession, within said corporate limits, to register their names and business, trade, calling or profession, in the office of the clerk of the council, at such times and under such regulations as the mayor and council may prescribe." Here, then, in the first words of the act, are the general words, making every person, etc., liable to register their names and business. This includes all those who are thereafter again referred to, both by particular and general words. The next paragraph limits the license fee which may be assessed on bankers, etc.; the third limits it on retail liquor dealers; the fourth limits it on other liquor dealers and druggists, who sell liquor for other than medicinal purposes; the fifth limits it on *all other persons.* Thus the general words both precede and follow the particular ones, and when they are first used, comprehend all those who are included in the subsequent *particular* or *general* words. This was not so in any of the cases to which we were referred, and in which it was held that this rule of construction applied. In 21 *Georgia,* 13, the words of the statute were, "lost papers, deeds, and *other writings.*" In 34 *Georgia,* 186, the act under review provided for the "impressment of forage, articles of subsistence *or other property.*" In 49 Missouri Reports, 559, there was an enumeration in the statute of many particular

trades, occupations, etc., followed by the general words, "and all other business, trades," etc.   In the decision rendered in the case last cited, after quoting the rule of construction above stated, it is said:   "By this is meant simply that the law should be construed according to the apparent intention of the legislature, to be gathered from the language used, connected with the subject of legislation, so that its terms shall not be extended by implication beyond the legitimate scope or import of the words used."   So we think in this case that such a rule of interpretation should be adopted as will carry out the intention of the legislature.   And it is our opinion, that under this act the city council could, by the first paragraph of the first section of this act, require all persons, etc., to register— that under the second, third and fourth paragraphs, they could assess the license fees therein specified on the particular classes mentioned in those paragraphs, and under the fifth, levy the fee in it stated, on all others of those registered or liable to registration which are comprehended in the first, and not included in the second, third and fourth paragraphs.   Any other construction would lead to the necessity of rejecting a portion of the section altogether, or at least render it inoperative and a nullity.   The court below sustained the position on this point assumed by complainants, and in that we think erred.

4. By the first section of the act referred to, the city council was authorized to assess a tax not exceeding one per cent. on sales made by persons selling goods on commission, and by registered firms, persons, companies and corporations.   Under this the council imposed a tax of one-half of one per cent. on such sales, and allowed a deduction from the sales of the amount of stock on which a tax had been levied.   The objection is that the act is unconstitutional, because it is in violation of that provision of the constitution already quoted, and if that be so, the ordinance, of course, would fall with it. The case of *Livingston vs. City Council of Albany*, 41 *Georgia*, 21, is cited to sustain this objection.   But when the facts of that case are looked into, as well as the decision itself, there is no conflict between it and the one we now render.   The

head-note of that case is: "The mayor and city council of the city of Albany have no power to impose a *specific* tax of $1 00 per head on each horse or mule sold by drovers in said city. They may tax such sales *ad valorem.*" The tax was $1 00 on the sale of every horse or mule sold in the city belonging to drovers, without regard to its value. It was held that this was in violation of the section of the constitution referred to. That was the only question in the case. It was not only put in the head-note that such sales might be taxed *ad valorem,* but it was said in the opinion that "a tax of a definite sum on each $100 00 of the value of all horses or mules under the protection of the city and sold within its limits, would be a legal tax," and further that the "legislature has power to impose or authorize the authorities of a city to impose a tax upon all such sales made by drovers, as they are a distinct class of traders, engaged in a distinct business or trade. But it must be imposed *ad valorem.*" It is true it is said, "a tax on the sale of horses or mules, or upon horses and mules sold, is a tax on property," but this must be understood in connection with the question involved, to-wit: a tax of $1 00 on each horse or mule sold, without reference to its value, and not a percentage upon the amount of sales. It is nowhere said in that case that a tax on sales, upon the amount of sales, is a tax on property. A specific tax on the sale of an article, having no regard to its value, and a tax apportioned according to the amount of sales, whether gross or net, are very different things. The first may be a property tax, but the latter is not, properly speaking, a tax on property, and is not obnoxious to the constitutional provision relied on. Cooley in his work on Constitutional Limitations, section 495, in discussing this question, says: "Taxes assume the form of duties, imports and excises. They may also assume the form of license fees, for permission to carry on particular occupations. They may be specific, such as are often levied on corporations in reference to the amount of capital stock, or *to the business done,* or property owned by them; or they may be direct upon property in proportion to its value, or upon some

other basis of apportionment which the legislature shall regard as just, and which shall keep in view the general idea of uniformity. The taxes collected by the states are mostly of the latter class, and it is to them that the constitutional principles we shall have occasion to discuss, more particularly apply." In sections 496 and 497, he proceeds with the consideration of this question, and says: "There is probably no state which does not levy other taxes than those imposed upon property." After enumerating various kinds of other taxes, he adds, "it is evident, therefore, that the constitutional requirements sometimes met with, that taxation upon property shall be according to value, do not include every species of taxation, but all special cases, like that referred to, are by implication excepted." No case was referred to in the argument, nor have we found one, in which it was held that a tax like the one under consideration was a tax on property and subject to the unformity and *ad valorem* rules of the constitution in reference to taxation. The one in 41 *Georgia*, already referred to, was a specific tax on the sale of specific property, regardless of value. In 42 *Georgia*, 427, it was a similar case, and none contrary to the decision we render in this has been found in any of the state court reports, where constitutional provisions similar to ours are to be found. Our conclusion is that a tax on sales, assessed on the amount of sales, not being a specific sum imposed on the sale of particular property, without regard to its value, does not come within that requirement of the 27th section of the first article of the constitution which provides that taxation on property shall be *ad valorem* and uniform on all species of property taxed.

5. The ordinance does not assess the amount of license fee which the act authorizes the city council to fix, and the fee for registration allowed the clerk, if added, would still leave a large margin. The clerk is entitled to compensation for the duties of registration, and it matters not whether he is paid by the allowance of a registration fee from the person registered, or by adding that much to the license fee, and then appropriating the same for his services.

6. Under the eighth section of the act, giving the broad power therein expressed, the mayor and council have authority, by ordinance, to impose a fine on those who are liable to registration and to pay the license fee, for refusing to comply with the provisions of the ordinance requiring the same.

The judgment of the court below is modified so as to conform to the opinions herein expressed.