THE MAYOR, ETC., OF MACON *vs.* THE MACON SAVINGS BANK.

Under the grant in the charter to tax "all other persons exercising within the city any profession, trade or calling, or business of any nature whatever," the city of Macon may tax chartered banks in said city on their business therein to the extent that private bankers are taxed therein.

Municipal corporations. Tax. Banks. Before Judge GRICE. Bibb Superior Court. October adjourned Term, 1877.

Reported in the opinion.

R. W. JEMISON & SON, for plaintiff in error.

HILL & HARRIS, for defendant.

JACKSON, Judge.

The city of Macon imposed a tax of $150.00 per annum upon all persons and banking corporations carrying on the

business of banking within that city. The Macon Savings Bank denied the right of the city to tax its business. Its capital or stock is taxed as other capital or property in the city—or, rather, the shares of its stockholders is—and it claims that the city cannot tax it for carrying on the business of banking. Hence it filed a bill praying for an injunction against an execution levied to collect the tax of 1877; the chancellor granted an interlocutory order restraining the collection of the tax until the hearing, to which the city excepted, and that makes the question for our review.

The grant of power to the city is very broad. It is in these words: " They shall have power to levy and collect a tax upon factors, brokers and vendors of lottery tickets, upon agents and managers of gift enterprises, and upon *all other persons exercising within the city any profession, trade or calling, or business of* ANY NATURE WHATEVER." Act of 1871–2, §14.

Certainly this language covers all business of any sort that *any person* may carry on in Macon. Is the Macon Savings Bank a person? The Code declares that the word "persons," in all statutes, shall include corporations (Code §5); and that persons are natural or artificial, (Code, §1651)—the latter being, of course, corporations. If, therefore, the Savings Bank be an artificial person—a corporation—it is expressly enacted by the general assembly that every statute which names "*persons*" shall apply to and embrace it— of course, where applicable from the nature of things. This statute is thus made by law to read, upon all other persons, natural or artificial—all exercising business of any nature whatever. This bank being an artificial person, and being as fully embraced by our general legislation in the Code in all statutes which use the word "persons" as if called therein a corporation, and setting out in the bill by its showing that it is a corporation, chartered in 1874, the next question is, does it carry on any business of any nature whatever in Macon? It carries on therein the very important business of banking, of brokerage, of loaning money, of buying

and selling exchange, of receiving deposits, and all the business which bankers ordinarily do.

It comes clearly, therefore, within the power to tax granted to the city of Macon by the legislature of Georgia.

Does its charter take it out of this general law ? for that instrument is the measure of its stature as a person and the limit of its sphere of action ; and if, among its privileges, there be any exemption from taxation, or limit upon the tax which it may be required to pay, it cannot be controlled by taxation imposed by the state, or any authority subordinate to the state, or deriving its power from the state. Nothing in the charter exempts it from taxation or limits the taxing power upon it. It is a charter granting to certain persons corporate rights with power to sue and be sued, to lend money, etc., etc., etc., but no privilege is granted in respect to taxes—state, county or municipal.

Is there anything in the former part of the act of 1871 which confers the power to tax the business of all persons which tends to show that the general assembly did not mean that the business of banking might be taxed by the city of Macon ?

The former part of the section reads, that the city "shall have power and authority to levy and collect a tax upon all property, real and personal, within the limits of the city ; upon the banking, insurance and other capital employed therein ; upon salaries and incomes derived from property within the city, and upon gross sales within the city : provided, that no tax upon real or personal estate shall exceed one per cent. upon the value thereof, except for the purposes and as is hereinafter provided." Then follows the clause first cited in regard to the tax on business of all sorts. So that it will appear that all sorts of capital is taxed in the provision last cited—whether invested in real or personal estate, or in banking or insurance, or in the hands of lawyers, doctors, mechanics, brokers, or any other person exercising any business whatever. If, then, because capital employed in banking is taxed, the business of banking cannot

be taxed, it would follow that the capital which the broker uses being taxed would prevent his business being taxed, and so of everybody else doing any business whose capital was taxed. The goods of the merchant, his gross sales; the books of lawyers, the tools of mechanics, the instruments of surgeons, all being liable to taxation as property, no business tax could be laid on any person pursuing any business which required any property in tools or outlay in means or shops necessary to work in.

We cannot believe that such was the intention of the legislature. If so, the latter part of the act would be made nugatory, especially in so far as the broad words: " and upon all other persons exercising within the city any profession, trade, or calling, *or business of any nature whatever* ", are concerned.

Is there any other act which limits this grant of power? We know of none. The act of 1876 merely alters the mode of taxing capital employed in banks, by empowering, or requiring, the city to tax the shares of stockholders, and the bank to pay it: see acts of 1876, p. 138. It has been argued by the able counsel for the defendant in error, that the effect of this act of 1876 is to repeal this power to tax the business of banks as given, if at all, in the act of 1871; but there is nothing in the act of 1876 which sustains that view. It is entitled an act to prescribe the mode of taxing the *stock* or *shares* of banks, and it is designed, evidently, to make such taxation by state authority uniform and upon shares of stockholders rather than the capital of the bank. The only alteration made is, that capital, *eo nomine*, shall not be taxed where employed in banking; but, in lieu thereof, the stockholders shall pay a tax upon their shares through the officers of the bank, who are required to return it and pay the tax, and, in event of failure, then the shares of the stockholders may be sold under execution to pay such tax. It would appear to strengthen the view we have that the business of banking is distinct from the property of the stockholders in the bank.

Nor do we deem it necessary to follow the counsel for the defendant in error in the elaborate research and ability which he has displayed, and the cases cited by him; for this case must turn on the construction of the act of 1871.

This case is wholly unlike the case of the *City of Macon vs. The First National Bank,* decided at the last term. That case was put distinctly upon the ground that the state could not tax the business of a national bank, because it was the fiscal agent of the federal government; and not having power to tax it itself, of course it could not transmit to another what it did not itself possess.

Indeed, that case recognizes the distinction between the power to tax *property* and that to tax *business ;* a distinction well defined in the authorities there referred to: 4 Wheaton, 430; 9 Wallace, 353; 18 *Ib.,* 5, 10, 36, 37; Revised Statutes U. S., §§5214, 5219.

In so far, then, as that case has a bearing upon this, it would seem that it is authority to show, that to tax capital or property is one thing, and to tax the business of the person or corporation using the capital, is another and different thing—particularly where, by the act of 1876, the tax is made a tax upon the shares of the stockholders and not *eo nomine* upon the capital of the bank. It is true that in the last analysis, these are the same, but the name by which they are called makes the distinction seem clearer.

Nor can it be said that this is a tax upon the franchise granted to the bank by the charter. That franchise is the privilege to exist as a person, to sue and be sued as one, to use money or capital in a certain way as a person, to be on an equality with a natural person in so far as its charter authorizes it to be, but to have no privilege which a natural person has not, and to be exempt from no duty or tax from which a natural person is not relieved, except it be so stipulated in the law of its being—the charter, which is its whole grant of power and the sole measure of its privileges and exemptions. It is permitted to use its capital in banking just as a private banker is, and is subject to the same

tax—no more, no less. It is protected by the police of Macon, the fire department of Macon, the privilege of renting or owning property therein, the immunities of location and residence therein, just as the private banker is; why should it not pay the same tax that such private banker has to pay? The artificial person should be protected in every right granted to him by the legislature which created his being, and if he be put above the natural person by the power which made him, it must stand as law, being nominated in the bond and part of the contract; but if no exclusive right, or exemption, or privilege, be expressly granted, let the corporate being be content to receive the same equal measure of protection, and to pay the same burden of taxation for it, with the natural being working in similar business and using similar capital right by its side. Indeed, under the Code, section 1682, the legislature reserves the right to withdraw the franchise, and that right enters into, and becomes part of, the contract made by the charter. So also does any power to tax granted to any municipal corporation become part of the charter, and hence the franchise is not violated by this tax, because it became part of the charter and modified the franchise. Or, in other words, the franchise was granted with this burden upon it.

We hold that the power to tax is conferred upon the city of Macon, and the judgment granting the injunction is therefore reversed.

Judgment reversed.