JOHNSTON *et al. vs.* THE MAYOR AND COUNCIL OF THE CITY OF MACON.

1. The limitation in the charter of the City of Macon and the amendments thereto, to the power to tax real and personal property in said city, does not affect the right of the city authorities to tax business therein, and to exact a license tax or fee therefor. The distinction between a tax on property, and a tax on business which may employ a part of that property in its industry, is well defined in this state, and is not an open question in this court.

2. When a tax on the business of merchandise is measured by the amount of goods sold by the merchant—that is by the gross value of his sales—the principle of uniformity applicable to all subjects of taxation by the constitution of 1877, demands that the tax should be *ad valorem*, and therefore the ordinance of the City of Macon, which requires each dealer in general merchandise, whose sales shall exceed $200,000.00 to pay a business tax of $300 00, and each dealer whose sales are between $100,000.00 and $200,000.00 to pay $200.00, and each dealer whose sales range from $75,000.00 to $100,000.00 to pay $150.00, etc, etc., is not a uniform tax in the true intent and meaning of the constitution of 1877, because a dealer who sold $199,000.00 worth of goods would pay but $200.00 tax, while his neighbor selling but $1,000.00 more would pay $300.00 tax. Each should pay in proportion to the goods sold, if the dealers be classified, not as wholesale and retail dealers, or by some other classification as distinct as that, having reference alone to the character of business, but as dealers whose quantum of sales is the guide to classification. Wherever values directly or indirectly are taxed, the spirit of the constitution of 1877, requires the levy to be *ad valorem*, and this too is the spirit of exact justice.

3. A tax on the business of drayage, scaled according to the number of drays employed and according to the capacity of the · drays, whether one or two horse, is uniform, and whether the drays be

employed in general business or be confined to the business of their owners and their customers in and about transporting goods to and from their stores, the legality of the tax is not affected. The wear and tear upon streets and bridges is as great in the one as in the other case—and the consequent expense to the city of this business is equal.

4. A tax on a private wagon, for private use and not employed in any hauling business for others, is a tax on property, and if assessed and paid once as property, it cannot be taxed again.

5. The mayor and council having the power delegated to them by the general assembly to tax, cannot delegate it to the mayor alone, and so much of the ordinances as so delegates this power is void.

6. Whilst the state cannot grant to a municipal corporation power to tax that which it cannot itself tax, yet it may grant the power over any of its own subjects of taxation; and the municipal authorities may tax under the grant whether the state see fit to exercise the power on its own account or not.

7. The city may commute the requisition on the people to work the streets by a commutation street tax of three dollars, and such commutation tax does not conflict with the constitution of 1877 in its provisions in respect to poll taxes.

8. The purposes for which these taxes are levied seem lawful, and the general system of taxation and amount of money to be raised thereby appear proper in view of the obligations of the city; in such cases, courts should be slow to stop the wheels of municipal government, and throw its affairs into anarchy. Whilst, therefore, we are constrained to reverse the judgment of the chancellor in so far as it up holds the ordinances taxing dealers in general merchandise, as they now stand, and the ordinances conferring on the mayor the power to tax, and the specific tax on private wagons, yet his judgment in the main was right and we leave it to his discretion to pass such order in the premises as will enable the city to modify those ordinances and collect its taxes in accordance with the views above noted.

Tax. Municipal corporations. Constitutional law. Roads and bridges. Before Judge Simmons. Bibb County. At Chambers, February 22, 1879.

Johnston and some forty-five others, representing a variety of occupations and trades in the city of Macon, filed their bill against the mayor, etc., to enjoin the collection of certain taxes, alleged to be illegal, which were assessed by the tax ordinance of 1879. The principal assessments complained of were the following:

Under the head of "license and specific tax," occurred the following :

| | | |
|---|---|---|
| For each and every one-horse wagon, one-horse dray, or one-horse express wagon, hauling in the city | $ 25 | 00 |
| For each two horse ditto | 50 | 00 |
| For each and every wagon with two or more horses, used for hauling brick, lumber, or any other article for the owner's private use, or in the city | 50 | 00 |
| For same, with one horse | 25 | 00 |
| For butchers' and bakers' wagons, etc., used for delivery, with one horse | 25 | 00 |
| With two horses | 50 | 00 |

Transient traders * * * * shall pay a tax to be fixed by the mayor in such cases.

So also of agents, canvassers, etc.

| | | |
|---|---|---|
| Each telegraph company | 850 | 00 |
| Wholesale and retail dealers in general merchandise, whose sales shall exceed $200,000.00, shall pay a business tax of | 300 | 00 |
| Where sales are not less than $100,000.00, and not over $200,000.00 | 200 | 00 |
| Where sales are $75,000.00, and not over $100,000.00 | 150 | 00 |

(And similarly of smaller sales. Then followed various specific taxes fixed according to occupations, a dog tax, and a reference to the mayor of theatrical licenses. Those given above are sufficient to illustrate the principles involved.)

Under the head of "revenue," were the following :

A commutation street tax of $3.00, to be discharged in money or by labor on the streets, at the choice of the tax-payer.

A tax of $1.00 per head on the sale of every horse or mule made by drovers or traders.

Power is conferred on the mayor to tax itinerant traders, etc.

A tax of of 1 per cent. on realty and personalty, levied for extraordinary purposes

Complainants' bill alleged the following points of illegality in these taxes :

That said city council has no power, under their charter, to assess such taxes; and if they ever had it, subsequent legislation has repealed it.

That the power given by the state to municipal bodies to

tax must conform to those subjects and classes of taxation which are taxed by the state itself.

That these business taxes violate the provisions of the constitution of 1877 as to *ad valorem* taxation.

That the tax levied is not for police purposes, or for regulation merely, but to raise revenue, and therefore void that it is discriminating, prohibitory and unjust.

That a road tax of three dollars on each person is therein imposed, which is nothing more than a poll tax of $3.00, and therefore void.

That said ordinance makes no appropriation of the taxes to be collected under it, not stating to what uses the same shall be applied.

That the law authorizes the city to levy only one-half of one per cent. for ordinary expenses of government, and this percentage cannot be increased except for extraordinary expenses (in which case the limit is one per cent.), and then the specific purposes to which this increase is to be applied must be distinctly stated; and also that said council has levied an *ad valorem* tax of one per cent. on all property in the city, which is the maximum allowed them, and has increased this by specific taxes virtually on the same property.

Complainants showed various amounts which had been assessed against them, in some cases including an *ad valorem* tax, a business tax, and a tax on wagons, all against the same person. They also alleged that some of them had been summoned before the mayor's court to show cause why they should not be fined for non-payment of these assessments.

The prayer of the bill was for injunction, general relief, and subpœna.

Defendants demurred and answered. The answer was, in brief, as follows:

Defendants alleged the passage of the ordinance, but alleged that they would have to meet, during the year 1879, $73,000.00 of bonds and interest accruing (extraordinary expenses); that the whole property in the city was not more

than $7,300,000.00, so that a tax of one per cent. on said property would barely pay the extraordinary expenses, and that the business tax, tax on trades, callings and licenses, were imposed to meet all the other expenses of government. Also, that no other *ad valorem* tax had been laid except that of one per cent., which was specially set apart for the object above stated.

That the city could not be governed, policed and taken care of as to health, etc., without these taxes; that the law authorizes them, and that some of the complainants, in past years, had been members of the city council, and assisted in similar assessments.

That the system of grading the licenses according to the amount of business was the only just and proper way of conforming to the constitutional requirements as to uniform taxation.

Exception was taken in the answer to the joining of some of the parties complainant in the bill, on the ground that they were not interested.

The chancellor refused the injunction, and complainants excepted.

WHITTLE & WHITTLE; LYON & GRESHAM, for plaintiffs in error.

BACON & RUTHERFORD; HILL & HARRIS; S. W. JEMISON; LANIER & ANDERSON, for defendants.

JACKSON, Justice.

1. The main question in this case is whether the city of Macon, having already taxed the property of people doing business, within its limits, can also under the charter tax the business of those people? The limitation in the charter is that no tax shall be levied on real and personal property over one per .cent. on its value ; does that limitation apply to business and the capital therein employed? We are of the opinion that it does not. There is more or less of capital in every sort of business. Professional men have books,

furniture, instruments, etc., etc., employed about their business, yet nobody contends that because a tax is paid on this property their business also cannot be taxed. A tax on property is one thing; a tax on business is a different thing. This distinction is clearly drawn in the books, and by our court. Indeed the question is not an open one with us. It was settled in the case of *The City of Macon vs. The First National Bank of Macon,* 59 *Ga.,* 648. There we held against the city, that it could not tax the business of that bank because it was or might be a fiscal agent of the federal government, though it might tax its property, and the shares of its stockholders.

So in another case of this same city *vs. The Macon Savings Bank,* 60 *Ga.,* 133, we held that the city might tax the business of that bank, though it had already taxed its capital as property, which is precisely the point here.

In the first case it could not tax the business of the National Bank because it was chartered by Congress, and the government of the United States used its business for their fiscal operations or could use it, and any interference by state taxation might, if allowed at all, amount to prohibition—by making the tax so high as to be prohibitory. In the last case, the bank was a state institution, the creature of its will, and its business could be taxed unless there was some provisions in its charter which prohibited the tax; and citing the charter, or grant of power to tax in the city, from acts of 1871–2, par. 14, we held that it covered " any profession, trade or calling, or business of any nature whatever." Indeed, such is the language of the grant itself. The limitation of one per cent. on property taxation was then considered in that case, and then determined. See, also, cited by plaintiff in error, 42 *Ga.,* 596; 49 *Ga.,* 135; 50 *Ga.,* 530; 52 *Ga.,* 251; 53 *Ga.,* 410, 616; 54 *Ga.,* 645; 55 *Ga.,* 678. Cooly on Tax., 384, 389. Burroughs on Tax., 146, 147, 152, 154, 390.

Nor do we think that the subsequent acts amendatory of this power to tax, granted by the act of 1871 before

cited, affect the question. Those provisions are found in the acts of 1874, pp. 110 and 196. They make still a limitation on the power to tax *property*, not *business;* and the distinction is a clear and settled one.

2. Whilst, therefore, we think the city may tax the business of the merchant, just as the business of the carpenter or blacksmith, or drayman or druggist, or doctor or lawyer, all of whom employ more or less of capital, we are of opinion that the merchants should either be classified by some clear distinction in business other than the amount or value of the business, such as wholesale or retail, dry goods or groceries, or if the tax be scaled according to the amount of business or value of sales, then such tax should be *ad valorem.* Such is the scheme and spirit of the constitution of 1877, and wherever any taxing power acting under that instrument essays to levy a tax in reference to values, it should levy *ad valorem.* The truth is, this is the only just mode. Otherwise, as indicated in the second head note to this opinion, a dealer in general merchandise might pay under the tax levied, $100.00 on $1,000.00 of goods sold, whilst others paid but $10.00 on the same sum. We think, therefore, that the clause which levies a tax of $300.00 on dealers who sell over $200,000.00, and $200.00 on dealers between $100,000.00 and $200,000.00, etc., etc., etc., is against the spirit of the constitution of 1877, and might result in great inequality and injustice. See constitution of 1877, article VII, section II.

It is true that the clause cited in words applies to property, but in sense and spirit we think it covers a business tax scaled by the amount or value of the business transacted.

3. The tax on drays proportioned or scaled by the number of horses—as one horse or two horse drays—we sustain as legal. The business is taxable whether the drays merely do the business of certain stores and their customers, or a general business. The wear and tear upon streets, bridges, etc., is as great in the one as in the other case.

4. But a tax on a private wagon for private use, not employed in any business of the owner, is not a tax on business but on property, and cannot be more than one per cent., and if taxed that much as property, it cannot be taxed again.

5. The mayor and council cannot delegate to the mayor the power to tax—" *delegatus non potest delegare.*"

6. Of course the state cannot grant power to another which itself does not possess; therefore, it cannot confer on a municipal corporation the right to tax anything which it may not have the power to tax itself. Still the corporation may tax and the state not tax; because the legislature does not see fit to tax certain subjects of taxation, which it has the right to tax, it does not follow that a city, on which it has the conferred the power to tax those same subjects, is barred from exercising the power, because the state did not exercise it. Burroughs on Tax, 385, 387.

7. There is nothing in the objection to the commutation street tax of three dollars in lieu of working the streets. It is not a poll tax and therefore not obnoxious to the constitution. Cooley on Tax., p. 12.

8. On the whole, we consider the judgment of the chancellor in the main correct; but so far as it upholds the ordinances taxing dealers in merchandise as they now stand, and the power of the mayor to tax under his delegated authority from council, and the specific tax on private wagons, we must reverse it.

It is a very delicate and dangerous thing to stop the wheels of government, either state or municipal; it tends to throw things into confusion and anarchy; and courts are slow to interfere. But the taxing power is a great power, and should be as sparingly exercised as possible. Much must be left to the discretion of those elected by the people to levy taxes. The ballot-box will ordinarily furnish a remedy before great harm is done in cases of abuse. From the record in this case it does not seem that more tax is imposed than is necessary to pay the debts falling due and to

carry on the city government during the present year; and after as careful a consideration as it was in our power to give the case, we arrive at the conclusions above indicated, and leave it to the chancellor to enfore them by such orders and directions as may be necessary to carry them into effect.

Judgment reversed with instructions.