WRIGHT, comptroller-general, *et al. v.* HIRSCH *et al.*

1. An act of the legislature should not be declared unconstitutional and set aside by the courts in a doubtful case. The repugnancy between the statute and the constitution must be clear and palpable.

2. Paragraphs 40 and 41 of section 2 of the general tax act of 1921 (Acts 1921, p. 38) do not violate art. 7, sec. 2, par. 1, of the constitution of this State, which is as follows: "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

(*a*) A tax upon a business or occupation is not a tax upon property within the ad valorem and uniformity clause. of the above provision of the constitution.

(*b*) Under the above provision of the constitution, the legislature is authorized to make classifications and subdivisions of classifications for the purpose of levying business or occupation taxes, and, in doing so, can make any classification or subdivision which is reasonable and not arbitrary.

(*c*) Under the above provision of the constitution, the legislature can put dealers in cigars in incorporated towns and cities in a class, and impose upon the members of such class an occupation tax, graduated according to the population of the towns and cities in which such dealers do business; and when the same tax is imposed upon each member of each class in every incorporated town and city in the State, and the method of its enforcement is the same, the uniformity required by the above provision of the constitution is secured.

(*d*) An act making such classification and imposing an occupation tax upon the members thereof does not violate the above constitutional provision because dealers outside incorporated towns and cities are not taxed.

3. Such classification being reasonable, there is no denial of the equal protection of the law, and no deprivation of property without due process of law, and no violation of the provision of the State con-

stitution which declares that protection of person and property is the paramount duty of government, and shall be impartial and complete.

4. The constitutionality and legality of an occupation tax is to be judged by its effect upon dealers generally, and is not to be construed as unreasonable because it is prohibitive upon certain financially weak persons. Only those laws imposing occcupation taxes the general operation of which is confiscatory and oppressive are to be declared unconstitutional.

5. We are requested to review and reverse the decision in the case of *Adams Motor Co.* v. *Cler*, 149 *Ga.* 818 (102 S. E. 440); but after such review, we decline to overrule that decision.

6. The court erred in granting the injunction in this case.

No. 3136. MARCH 2, 1923. REHEARING DENIED MARCH 3, 1923.

Injunction. Before Judge Ellis. Fulton superior court. February 14, 1922.

Numerous persons alleging themselves to be dealers in cigars, certain of them selling by retail and certain others selling by wholesale, instituted an action against the comptroller-general of the State and the tax-collector of Fulton County. The object of the suit was to enjoin collection of specific taxes levied by the State upon the above-named occupations in which the plaintiffs are severally engaged. The taxes were levied under the provisions of paragraphs 40 and 41 of section 2 of the general tax act approved August 15, 1921 (Acts 1921, pp. 38, 47-48). Collection of the taxes was resisted on the ground of alleged unconstitutionality of the statute under which they were levied. Section 2 of the act provides: "That, in addition to the ad valorem tax on real estate and personal property, as required by the constitution and now provided for by law, the following specific and occupation taxes shall be levied and collected each year after the passage of this act, beginning in 1922. In all cases in this act where population controls the amounts of tax or license fee to be paid, the last census report of the Federal Government shall govern." Then follows a long list specifying different persuits as objects of taxation contained in paragraphs 1 to 118, inclusive. In this list paragraph 40 is as follows: "Cigars. Upon each person, firm, or corporation engaged in the sale of cigars at wholesale, in cities of less than 50,000 population, $50.00 for each place of business; and in cities of 50,000 and over, $100.00 on each place of business." Paragraph 41 is as follows: "Retail Dealers in Cigars. Upon each person, firm, or corporation en-

gaged in the sale of cigars at retail, in towns or cities of less than 2,000, $5.00; in towns or cities of more than 2,000 and less than 5,000, $10.00; in towns or cities of more than 5,000 and less than 10,000, $20.00; in towns or cities of more than 10,000 and less than 20,000, $25.00; in towns or cities of more than 20,000 and less than 30,000, $30.00; in towns and cities of more than 30,000 and less than 40,000, $35.00; in towns and cities of more than 40,000 and less than 50,000, $40.00; in towns and cities of more than 50,000, $75.00." It was contended that paragraph 40 was violative of article 7, section 2, paragraph 1, of the constitution (Civil Code (1910), § 6553), which declares: "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." It was insisted that the act does not operate uniformly, because, while taxing cigar dealers as a class (admittedly within legislative power), the act does not place the same tax on all members of that class throughout the territory of the State, but levies different taxes against members of such class in cities and towns graduated according to population, and leaves out members of the class in unincorporated districts in the State, of which class there is a large number. For similar reasons paragraph 41 was alleged to be violative of the same clause of the constitution.

In making another attack on paragraph 41 it was alleged that the act operates more favorably for a large dealer in a small town than for a small dealer in a large town; and even in the same town, where the large dealer has a "chain of stores" operating under payment of one tax, and the small dealer has but one store; also more favorably for non-residents than for residents; also more favorably for dealers in unincorporated territory within the limits of the State than for dealers operating in towns and cities having populations as specified in the act; and for such reasons the act is discriminatory and violative of article 1, section 1, paragraph 2, of the constitution (Civil Code, § 6358), which declares that "Protection to person and property is the paramount duty of government, and shall be impartial and complete." In making another attack on paragraph 41 it was alleged that the normal conditions of the trade were such that the gross sales

of a large number of the plaintiffs were only $750 per annum, and of others only $75 per annum; and that as to the former the tax would amount to all the profit, and as to the latter the tax would amount to the gross sales, and would in effect take plaintiffs' property without due process of law, in violation of article 1, section 1, paragraph 3, of the constitution (Civil Code, § 6359), which declares: "No person shall be deprived of life, liberty, or property, except by due process of law."

At an interlocutory hearing the judge granted a temporary injunction, and the defendants excepted.

*George M. Napier, attorney-general, Seward M. Smith, assistant attorney-general,* and *Frank Carter,* for plaintiffs in error.

*Hooper Alexander,* contra.

HINES, J. It is insisted that paragraphs 40 and 41 of section 2 of the general tax of 1921 act do not operate uniformly, because, while taxing cigar dealers as a class (admittedly within legislative power) they do not place the same tax on all members of that class throughout the territory of the State, but levy different taxes against members of such class in cities and towns graduated according to population, and exempt from such tax all members of the class in unincorporated districts in the State, of which there is a large number. It is further insisted that paragraph 41 is unconstitutional, because it operates more favorably for a large dealer in a small town than for a small dealer in a large town; and even in the same town, where the large dealer has a chain of stores operating under the payment of one tax, and the small dealer has but one store; also more favorably for non-residents than for residents; also more favorably for dealers in unincorporated territory within the limits of the State than for dealers operating in towns and cities having the population specified in this section; and for these reasons it is alleged that this paragraph of this section of the act is discriminatory and violates article 1, section 1, paragraph 2, of the constitution of this State, which declares that "Protection to person and property is the paramount duty of government, and shall be impartial and complete." Civil Code (1910), § 6358. Paragraph 41 is attacked on the ground that, under normal conditions of trade, gross sales of a large number of the plaintiffs amount to only $750 per annum, and the gross sales of others

of the plaintiffs amount to only $75 per annum, and that as to the former class the tax would amount to all the profit made by such dealers, and as to the latter class the tax would amount to their gross sales, and would, in effect, take their property without due process of law, in violation of the due-process clause of the State constitution.

1. We should go at a snail's gait in declaring legislative enactments, and especially tax acts, upon which the very life of the State depends, unconstitutional and void. We should avoid declaring legislation unconstitutional and void except as a dernier resort. A solemn act of the legislature will not be set aside by the courts in a doubtful case. The repugnancy between statute and the constitution must be clear and palpable. *Carey* v. *Giles,* 9 *Ga.* 253 (4) ; *Wellborn* v. *Estes, 70 Ga.* 390; *McMahon* v. *Savannah,* 66 *Ga.* 217, 222 (42 Am. R. 65). A legislative act will never be set aside in a doubtful case. *Park* v. *Candler,* 114 *Ga.* 466 (40 S. E. 523). In approaching a question involving the constitutionality of legislation, we should saturate our minds with the above principle, and should never in a case of doubt pronounce invalid the action of the legislative department of the government.

2. Are these attacks upon these two paragraphs of section 2 of this tax act well founded? Are they in conflict with article 7, section 2, paragraph 1, of the constitution of this State? The answer to these questions involves the proper construction of the constitutional provision, which is as follows: " All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Civil Code (1910), § 6553. This paragraph of the constitution provides for the levying of occupation taxes and taxes on property. The language, " all taxation shall be uniform upon the same class of subjects," refers to occupation taxes. The phrase, " ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax," refers to taxation on property, and has nothing whatever to do with an excise or business tax. This doctrine has long been established and persistently adhered to by this court. *Burch* v. *Savannah,* 42 *Ga.* 600; *Bohler* v. *Schneider,* 49 *Ga.* 195; *Home*

*Ins. Co.* v. *Augusta,* 50 *Ga.* 530; *Mayor &c. of Rome* v. *McWilliams,* 52 *Ga.* 251, 269; *Goodwin* v. *Savannah,* 53 *Ga.* 410; *Shepperd* v. *Commissioners,* 59 *Ga.* 535 (27 Am. R. 394); *Cutliff* v. *Albany,* 60 *Ga.* 597; *Johnston* v. *Macon,* 62 *Ga.* 645; *Davis* v. *Macon,* 64 *Ga.* 128 (37 Am. R. 60); *Mayor &c. of Savannah* v. *Weed,* 84 *Ga.* 683 (11 S. E. 235, 8 L. R. A. 270); *Weaver* v. *State,* 89 *Ga.* 639, 642 (15 S. E. 840); *McGhee* v. *State,* 92 *Ga.* 21 (17 S. E. 276); *Singer Mfg. Co.* v. *Wright,* 97 *Ga.* 114 (25 S. E. 249, 35 L. R. A. 497); *Stewart* v. *Kehrer,* 115 *Ga.* 184, 189 (41 S. E. 680); *City Council of Augusta* v. *Clark,* 124 *Ga.* 254 (52 S. E. 881); *Witham* v. *Stewart,* 129 *Ga.* 48 (58 S. E. 463); *O'Neal* v. *Siloam,* 147 *Ga.* 420 (94 S. E. 238); *Adams Motor Co.* v. *Cler,* 149 *Ga.* 818 (102 S. E. 440).

A careful study of the above cases will demonstrate that the two propositions above stated are now the well settled law of this State. In *Bohler* v. *Schneider,* this court held that the act of the legislature "imposing a special tax on wholesale dealers in malt liquors is not in violation . . . of the constitution of this State, which says, 'taxation on property shall be ad valorem only and uniform on all species of property taxed.'" In *Home Ins. Co.* v. *Augusta* this court said: "A tax on occupations, businesses, etc., is not, in legal contemplation, a tax on property, so as to be subject to the ad valorem and uniformity rules of taxation, prescribed by the constitution." In *Mayor &c. of Rome* v. *McWilliams,* this court declared: "The objection is that this act is unconstitutional, in that it empowers the city authorities to assess a different rate on some trades, callings, etc., than it does on others, and is therefore in conflict with that provision of the constitution which requires taxation on *property* to be *ad valorem,* and uniform on all species of property taxed. It has been held by this court in several cases that a tax on businesses, professions, etc., was not a tax on *property.* It is unnecessary to do more than to refer to them without repeating the argument;" and the court then refers to *Mayor &c. of Savannah* v. *Charlton,* 36 *Ga.* 460, and the three cases, 42 *Ga.,* 49 *Ga.* and 50 *Ga.,* to which we refer above. In *Goodwin* v. *Savannah,* this court again ruled: "It has been several times held by this court that a tax on occupations, businesses, professions, etc., is not a tax on property, subject to the ad valorem and uniformity rule,

provided in the 27th section of the 1st article of the constitution: 42 *Georgia,* 596; 49 *Ibid.* 195; 50 *Ibid.* 530." The above cases were decided under the constitution of 1868; but this fact does not render these decisions inapplicable to the proper construction of the provision in the constitution of 1877 on this subject, although the provision upon the same subject in the former constitution is somewhat different from that in the latter. In *Mayor &c. of Savannah* v. *Weed,* a case construing the provision in the constitution of 1877, this court again proclaimed the same doctrine, as follows: "We think that this clause refers to subjects of taxation other than property, and means that if one kind of business, privilege, franchise, right, etc., is taxed, the tax shall be uniform upon all of that class." In *Weaver* v. *State,* this court again said: "It is too well settled to require discussion, that a tax upon a business or occupation is not a tax upon property, within the meaning of the ad valorem and uniformity clause of the constitution. And it is not a valid objection that another business or occupation is not taxed, or is taxed a different amount. The requirement as to this kind of taxation is that it shall be uniform upon all business of the same class."

What, then, is the uniformity required in the classification of occupations for taxation? We have seen that the provision in the constitution, that taxation upon property shall be ad valorem within the territorial limits of the authority levying the tax, does not apply to the taxation of occupations. The uniformity required in the latter kind of taxation is simple. It is this, that the tax upon every member of any class, which the taxing authority may make, shall be uniform. When that is accomplished, there is no infraction of the constitution. In *McGhee* v. *State,* supra, it was said: "When, however, the legislature does make a distinct class, it must treat each member of it alike. It could not provide that some lawyers, some physicians, or some liquor dealers, must register and pay their taxes in advance, and be indictable for failing to do either, and relieve other lawyers, physicians, or liquor dealers from these provisions. *When it makes a class of lawyers, physicians, liquor-dealers, dealers in futures, or any other class, including one or more occupations, the same provisions must be made as to each member of the class."* The real question in this case is this: can the legislature classify cigar

dealers into city dealers and country dealers, and tax the members of the former class and leave the latter untaxed? The answer to this question depends upon the extent of the power of the legislature to make classifications of subjects for levying occupation taxes.

The power of the legislature to classify persons for the purpose of imposing occupation taxes is undisputed. The provision of the constitution with which we are dealing clearly recognizes this power of classification. The power to classify necessarily includes the power to subclassify. The legislature does not exhaust its power in this matter when it puts dealers of a particular kind in one class. It can place grocers in a class by themselves. It can put cigar dealers in a class by themselves. It can do the same thing with any other class of merchants. It can then subdivide these classes into wholesale and retail dealers, and put a higher tax upon the former than upon the latter. Cook *v.* Marshall County, 196 U. S. 261 (25 Sup. Ct. 233, 49 L. ed. 471). In framing tax acts it has long been the custom of the legislature to divide merchants into wholesale and retail, and to place a higher occupation tax upon the former than upon the latter. This power of subclassification has been expressly declared to exist, by this court. In *McGhee* v. *State,* supra, this court said: " Accordingly, there seems to be no constitutional reason why the legislature could not make one general class of all persons upon whose occupations it imposed taxation; and if this were done, we think it would then be incumbent on the legislature to make its system of taxation, as to such persons, uniform in all essential particulars, so as to operate fairly and equally upon each and every member of this general class, and this class might be made to include every person engaged in any sort of business vocation. The legislature has not seen proper, however, to make a class so universal. In the first place, many occupations are not taxed at all; and secondly, those which are taxed are divided into numerous classes. Certainly the framers of our constitution never intended that no occupation could be taxed without taxing all occupations, as, for example, that in order to tax liquor-dealers on the business pursued by them, farmers must be taxed on their business. If this were so, it would follow that they must all pay the same tax, a result which we are absolutely certain was never contem-

plated by even a single member of the constitutional convention. We therefore think the legislature may omit from its system of taxation on vocations many occupations altogether. It certainly does this, and, in our opinion, there can be no doubt of the wisdom and propriety of such action. We think, further, that occupations which are taxed may be divided into various classes."

In *Singer Manufacturing Co.* v. *Wright,* supra, this court said: "It would therefore seem to be established that it is not only within the power of the General Assembly to make one general class of all persons engaged in manufacturing or dealing in sewing-machines, for the purpose of taxing them upon their occupations, but it may constitutionally make for this purpose a more limited class, composed of persons engaged in the sewing-machine business and consisting of those transacting such business in specified or particular ways." Here the power of the legislature to make classifications and subclassifications is expressly recognized and declared.

In *Goodwin* v. *Savannah,* 53 *Ga.* 410, this court held that "A tax levied by the mayor and council of Savannah, on the business of a common carrier within the city, is not illegal or unconstitutional because the tax is graduated according to the number of drays, carriages, wagons, etc., used in such business." The ordinance of the City of Savannah imposed an occupation tax upon every person employing in his business any dray, truck, cart, wagon, cab, hack, buggy, omnibus, break-wagon, or any other vehicle for the transportation of passengers and baggage, or goods, wares, and merchandise. The ordinance imposed a tax of "$16.00 for each one-horse dray or truck; $24.00 for each two-horse dray or truck," and so on. This ordinance dealt with a general class of common carriers in the City of Savannah. It created divers subdivisions of this class. Those who employed one one-horse dray were put in a class and taxed $16 per annum. Those who employed two one-horse drays were put in a class and taxed $32 per annum. Common carriers employing three one-horse drays were put in another class and taxed $48 per annum. This multiplication of classes went on indefinitely, the employment of every additional one-horse dray creating a separate and distinct class and an additional occupation tax. Furthermore, this ordinance levied a tax of $24 upon every common carrier in that

city employing one two-horse dray. Thus carriers using only one two-horse dray were put in a class and an occupation tax of $24 was imposed upon each of them. Common carriers who employed two two-horse drays were put in another class and a tax of $48 per annum was imposed upon each member of this class. The employment of each additional two-horse dray had the effect of bringing into existence a separate and distinct class upon each member of which an additional and heavier tax was imposed. This court held that this municipal ordinance which created a general class of common carriers and these numerous subdivisions of this class was constitutional. In *Johnston* v. *Macon,* this court declared: " A tax on the business of drayage, scaled according to the number of drays employed and according to the capacity of the drays, whether one or two-horse, is uniform." The ordinance of the City of Macon involved in this case put persons engaged in the business of drayage in that city in one class, and then divided that class up into various subdivisions. One division embraced the users of one-horse drays. Another division embraced users of two-horse drays. Each one of these subdivisions was again cut up into other classes depending upon the number of drays employed. The employers of one one-horse dray were put into a class by themselves and taxed $25 per annum. The users of two-horse drays were put in another class and taxed $50 per annum. Users of wagons with two or more horses used in hauling brick, lumber, or any other article for owner's private use or in the city were put in another class and a tax of $50 was imposed upon each member of that class. This court held that that ordinance did not offend the uniformity clause of the constitution which we now have under consideration.

In *Sawtell* v. *Atlanta,* 138 *Ga.* 687 (75 S. E. 982), an ordinance of the City of Atlanta imposing a tax of a fixed amount on ice houses, manufacturers, or agencies not employing more than five wagons for selling or delivery purposes, and for each additional wagon above the number of five an additional tax of $10, was held to be valid and not violative of the constitutional provision that all taxes must be uniform upon the same class of subjects. In *Davis* v. *Macon,* supra, this court held that an ordinance imposing a tax of $50 upon " each person or firm (farmers selling their own produce excepted) retailing fresh or butcher's

meat in the city, whether from stalls, stores, or by peddling the same on the streets," and which likewise imposed a tax of $25 " for each and every wagon used by butchers and bakers in their business," did not violate this provision of the constitution. This ordinance, in effect, created two classes of retailers of fresh or butcher's meat. One class consisted of those who retailed such meat without the use of wagons, and a license or occupation tax of $50 was placed on each member of this class. The other class consisted of butchers who used wagons in their business, and an additional tax of $25 was placed upon such butchers, making the members of the latter class pay an occupation tax of $75 per annum.

Subsection 12 of section 2 of the general tax act of 1918 (Acts 1918, pp. 43-83) imposed a graduated occupation tax upon every agent, dealer, and person soliciting orders for the sale of automobiles. In each county with a population of less than 20,000, a tax of $27.50 was imposed; in each county with population between 20,000 and 30,000, $55; in each county with population between 30,000 and 50,000, $82.50; in each county with population between 50,000 and 75,000, $110; in each county with population between 75,000 and 100,000, $165; in each county with population between 100,000 and 150,000, $220; and in each county with population exceeding 150,000, $275. Here the legislature put agents, dealers, and persons soliciting orders for sale of automobiles in one general class for the purpose of taxation. It then subdivided the general class into six classes. One embraced dealers operating in counties of a population of less than 20,000. A second class embraced persons operating in counties with population between 20,000 and 30,000. A third class related to counties with population between 30,000 and 50,000, and so on. In *Adams Motor Co. v. Cler*, supra, this court held that this act did not offend the provision of the constitution with which we are now dealing, and that the classification was not arbitrary, descriminatory, or unreasonable.

So this provision of the constitution does not require that the legislature, in making a classification for the purpose of levying an occupation tax, shall put in one class all persons engaged in the same or similar work, business, occupation or trade. If this were true, the legislature could not place wholesale dealers

in one class and retail dealers in another class, and tax the former and exempt the latter, or put upon the former a higher tax than on the latter. The legislature can divide persons engaged in the same general occupation into subdivisions, if there is reasonable ground for such subclassification, and tax members of one subdivision, and exempt those of another subdivision. The legislature is not required to place all merchants in the same class. It can put fur merchants in one class and tax members of that class. It could subdivide this class, if there were reasonable ground for the subdivision. On the same principle, it can make classes of cigar dealers. It can classify them as wholesale and retail. It can place city cigar dealers in one class and country cigar dealers in another. It can tax one and leave the other untaxed. But when it makes such a classification, it must put the same tax upon each city dealer and provide the same method for collecting the tax from each member of the class.

This brings us to consider the limitations upon the power of the legislature to make classifications of subjects for occupation taxes. This power is not unlimited; but it has but one limitation. The classification must be reasonable, and not unreasonable or arbitrary. "Any classification may be made which is not arbitrary." *Mayor &c. of Savannah* v. *Cooper,* 131 *Ga.* 670 (63 S. E. 138) ; *Williams* v. *State,* 150 *Ga.* 480, 485 (104 S. E. 408). In the first instance, it is for the legislature to judge of the reasonableness of the classification; but finally the courts decide for themselves the reasonableness or unreasonableness of the classification. Now by what rule are the courts governed in deciding upon the reasonableness or unreasonableness of such classification? Classification must be based on some reasonable ground. It can not be an arbitrary selection. This is about as accurately as the rule can be stated. The classification must square with the rule of reason. Billings v. Illinois, 188 U. S. 97, 101, 102 (23 Sup. Ct. 272, 47 L. ed. 400). The classification must be based on some difference which bears a just and proper relation to the attempted classification. Juniate Limestone Co. v. Farley, 187 Pa. 193 (40 Atl. 977, 42 L. R. A. 442, 67 Am. St. R. 579). If there is some reasonable ground for the classification of cigar dealers into city cigar dealers and country cigar dealers, the classification is valid and constitutional. If a classication can be based upon the

number of drays or wagons used in a business, or upon the fact that the person taxed uses a one-horse dray or a two-horse dray, or upon the fact that the person taxed uses more than five wagons in his ice business, or upon the population of the county in which the person taxed does business, then surely a classification based upon the distinction between a mercantile business carried on in a city and the same business conducted in the country rests upon a reasonable ground, and is not unreasonable and arbitrary. There is a substantial difference between the businesses of these two kinds of dealers. They are alike alone in the one fact that they both sell cigars. The stores and places of business of the country dealers are located in hamlets, at country cross-roads, and on farms. The places of business of city dealers are in the centers of population. The volume of business done by the former is always small and insignificant. The amount of business done by the latter is usually substantial. The profits of the former are small. The gains of the latter are large. The turnover of capital on the business of the former is slow; and of the latter, frequent. The business of the former for many months in the year is done on a credit. The business of the latter is for cash or on short credit. These and other facts furnish ample reason for this classification.

We have been unable to find many cases which bear upon the exact point involved. The question was involved in *Davis* v. *Macon,* 64 *Ga.* 128 (supra). That case dealt with an ordinance of the City of Macon which imposed an occupation tax upon butchers and retailers of meat, but exempted farmers from its operation. This classification was upheld upon the ground that the tax was a business tax, " and a farmer's business is production, not trade, and the sale directly by himself of what he rears and produces is merely occasional and incidental." In State *v.* Carter, 129 N. C. 560 (40 S. E. 11), it was held that a statute imposing a license tax upon the business of buying and selling fresh meats in cities, such tax graduated according to population, and exempting persons carrying on the business outside of cities and towns, was not unconstitutional, as it was uniform as to all within such class. In Texas Banking &c. Co. *v.* State, 42 Tex. 636, the Supreme Court of Texas held: " The constitutional limitation, that ' taxation shall be equal and uniform throughout the State,'

is not violated by the act . . imposing an occupation tax upon every person or firm dealing in stocks or bills of exchange, in any city or town exceeding five thousand in population, an annual tax of two hundred and fifty dollars, and upon such occupation, in a city or town of less population, fifty dollars." The flaw in the contention of the plaintiffs, and the vice in the reasoning upon which they base their contention, are that they assume that the classification is a territorial one, when in fact it is a classification of cigar dealers for the purpose of levying occupation taxes. This classification is not one of territory. It is one of cigar dealers. It is one of persons. It is one of subjects of taxation. A typical case of territorial classification would be made, if the legislature should impose an occupation tax upon cigar dealers in north Georgia and exempt cigar dealers from the tax in south Georgia, or impose an occupation tax upon these dealers in Chatham County, and exempt all dealers in other counties of the State. So we are of the opinion that these provisions of the tax act of 1921 do not violate the provision of the State constitution which provides for uniformity in taxation upon the same class of subjects. Whenever a classification for occupation taxes, whatever may be its basis, is reasonable and the tax imposed upon all persons falling within such class is the same, the uniformity demanded by our constitution is secured.

3. If we are right in the position announced above, and this classification is reasonable, there is no denial of the equal protection of the law, and no deprivation of property without due process of law, and no violation of the provision of the constitution which declares that protection of person and property is the paramount duty of government, and shall be impartial and complete.

4. But it is further insisted that the enforcement of this tax will deprive certain dealers of all the profits which they make from the sale of cigars, and will take from others the actual investment in such merchandise. This furnishes no reason to declare these provisions of the tax act of 1921 unconstitutional. The occupation tax is to be judged by its effect upon dealers generally, and is not to be considered unreasonable because it is prohibitive upon certain financially weak persons. Only those laws imposing occupation taxes the general operation of which

is confiscatory and oppressive are to be declared unconstitutional. Ohio Tax Cases, 232 U. S. 576 (34 Sup. Ct. 372, 58 L. ed. 737).

*Judgment reversed. All the Justices concur, except*

ATKINSON and HILL, JJ., dissenting. The tax in question is a specific tax levied upon occupations, and by the terms of paragraphs 40 and 41 in section 2 of the act the occupation of selling cigars is classified into two classes: (1) selling by wholesale; (2) selling by retail. The classes have common features to the extent that to each is applied a scale of taxation in the territory of towns or cities, graduated according to population of the towns or cities, and neither requires a tax for conducting similar businesses within the territory of the State outside of towns or cities. In these circumstances both classes will be treated as one, and the attacks on the constitutionality of paragraphs 40 and 41 will be considered together in so far as it is charged that those provisions of the law violate the uniformity clause of article 7, section 2, paragraph 1, of the constitution. This provision appears in the Civil Code, § 6553, exactly as follows: " All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." This statement of the clause both as to language and punctuation is an exact reproduction of the original manuscript of the constitution of 1877, of file in the office of the Secretary of State. The Journal of the Constitution of 1877, p. 205, shows that Mr. Toombs, chairman of the committee of final revision, submitted a report on July 1st, recommending that all provisions for taxation and public debt be grouped in one article in the constitution, and among others included the following: " Sec. 2. All taxation shall be uniform upon the same class of subjects, and ad valorem on all property within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." In the proceedings of August 7th, (p. 298) are the statements: " Mr. Mynatt moved to amend the first paragraph of section two, as follows: by inserting the words: subject to be taxed, between the words ' property ' and ' within,' in the second line. The motion prevailed."

In *Mayor etc. of Savannah* v. *Weed,* 84 *Ga.* 683, the question was as to the validity of an ordinance requiring one rate of tax-

ation upon realty, another rate upon one kind of personalty, and still another rate on a different kind of personalty. The ordinance was held to be void as violative of the above provision of the constitution. The opinion was rendered by Justice Simmons, who was a former member of the constitutional convention of 1877. In the course of the opinion, while discussing the history and proper construction of the above clause, it was said: "The constitution of Pennsylvania on this subject is as follows: 'All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.' Our constitution upon this subject reads as follows: 'All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.' If our constitution were an exact copy of the Pennsylvania constitution upon this subject, we would most certainly agree with the learned counsel for the plaintiff in error, that property might be classified and different rates of taxation put upon it; but we think that when the framers of our constitution interjected into the clause the words 'and ad valorem on all property subject to be taxed,' it was their intention that there should be no classification of property so that it might be taxed at different rates. Property is not the only subject of taxation. 'Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise or privilege, or occupation or right.' Cooley, Taxation, p. 5. We think that this clause refers to subjects of taxation other than property, and means that if one kind of business, privilege, franchise, right, etc., is taxed, the tax shall be uniform upon all of that class. For instance, if liquor dealers are taxed, the tax as to all liquor dealers shall be uniform; if draymen are taxed for carrying on their business, the tax shall be uniform as to all of that class; or if butchers, lawyers, physicians, dentists, and photographers are taxed, the tax need not be the same upon all of these, but shall be uniform as to each one of these classes." This decision construing the clause of the constitution in question holds two things: (1) property can not be classified so that it may be taxed at different rates; (2) occupations can be

classified for such purpose, but the tax imposed upon each class must be the same upon every member of that class. What is meant by taxing every member of a class is explained by illustrations such as, " if liquor dealers are taxed, the tax as to all liquor dealers shall be uniform," and so as to other specified occupations. What is meant by " all liquor dealers?" As uniformity is the requirement of the constitution and " liquor dealers " is the supposed class, it logically refers to " all " of that class engaged within the territorial limits of the authority levying the tax. Application of the decision as thus interpreted, and as it was evidently intended, will avoid discrimination between members of the same class located in different sections of the taxing authority; whereas discrimination would result if different taxes should be imposed on members of the same class located in different sections of the " taxing authority," or if a tax should be imposed on one member and no tax should be imposed on another.

Other decisions by this court will now be noticed, through each of which runs the thread of interpretation above indicated. The case of *Weaver* v. *State,* 89 *Ga.* 639, involved the validity of a statute authorizing the levy of a tax on the business of selling sewing-machines. It was held that the tax was uniform upon all business of the same class, and " the statute is not unconstitutional because it imposes a tax on that business without taxing other business and occupations, nor because it is not uniform with the method of returning and collecting taxes on property, nor because it prescribes a penalty for violation of its requirements." In the course of the opinion it was said by Simmons J.: " And it is not a valid objection that another business or occupation is not taxed, or is taxed a different amount. The requirement as to this kind of taxation is that it shall be uniform upon all business of the same class." In *McGhee* v. *State,* 92 *Ga.* 21, 26, it was said: " It would not be expedient, necessary, or just to subject all occupations to the same amount of taxation, or to the same provisions as to enforcing payment. This will be obvious without entering into details. When, however, the legislature does make a distinct class, it must treat each member of it alike. . . When it makes a class of lawyers, physicians, liquor-dealers, dealers in ' futures,' or any other class, including

one or more occupations, the same provisions must be made as to each member of the class."

In *Singer Manufacturing Co.* v. *Wright,* 97 *Ga.* 114, 118-120 it was said: "It is within the constitutional power of the General Assembly of this State, in the imposition of specific taxes upon occupations, to classify the subjects of taxation, taxing some and omitting to tax others; and the principle of uniformity required by par. 1, sec. 2, art. 7 of the constitution is not violated so long as a given tax is made uniform upon all individuals belonging to the particular class on which it is imposed." In the course of the opinion it was said: "The most serious question for determination as to the constitutionality of the law in hand, in view of the 'uniformity clause' above mentioned, is this: Is its language sufficiently comprehensive in meaning to embrace all manufacturers of sewing-machines who sell at retail? Unless it is, the law must fail; because, when once a class is established, every member properly belonging to that class must be taxed, or else the uniformity required is destroyed. . . The power of the legislature extends only to classifying business occupations into different branches, and laying upon each separate branch thus created such a tax as is deemed proper. The legislature has absolutely no power to classify persons, natural or artificial, engaged in precisely the same occupation, laying a tax upon some of them and exempting others, or imposing a tax not operating uniformly upon all." The last clause of this decision seems to have had in view an interpretation of the constitution and the former decisions of this court, such as hereinbefore pointed out, and to have declared the limit beyond which classification of occupations for taxation could not go; such declaration inhibiting imposition of "a tax not operating uniformly upon all" persons engaged in precisely the same occupation.

The foregoing deals with the subject of classifying occupations for taxation under the constitution of this State, which is more specific than some constitutions which have been held to prohibit classifications similar to that attempted in the present case. In North Carolina a statute required a State license for which $1000 should be paid to engage in the business of hiring laborers to be employed beyond the limits of the State, and it was made a crime to engage in such business without having obtained a license. The

terms of the act excluded from its operation any of the counties of the State west of a specified line, except a few counties that were specially named. The constitution of the State authorized the legislature to tax " trades, professions, franchises," etc., but did not expressly provide that such taxes should be uniform. It was held that the statute was unconstitutional, because it imposed a State tax on an occupation when conducted in some counties in the State, while it did not impose such tax on the same kind of occupation when conducted in other counties in the State, and thereby violated the constitutional requirement of uniformity. State v. Moore, 113 N. C. 697 (18 S. E. 342, 22 L. R. A. 472). The opinion contained quotations from a number of former decisions, including the decision of Puitt v. Gaston County Comrs., 94 N. C. 709 (55 Am. R. 638), where it was said: " ' The principle of uniformity pervades the fundamental law, and while not in the constitution applied in express terms to the tax on trades, professions, etc., necessarily underlies the power of imposing such tax.' " After the quotations referred to it was stated in the opinion: " The act under consideration, if intended to impose a tax in the legal significance of the term, very plainly falls within the inhibition of the organic law as interpreted so often by this court; for it cannot, with the least show of reason, be contended that the principle of uniformity is not violated when the same occupation is heavily taxed in one county, while in an adjoining county it is entirely free and untrammeled. It is too plain for argument that if the legislature had passed an act imposing a tax upon merchants doing business in the counties of New Hanover, Pender, and Bladen, while like merchants in the counties of Brunswick, Robeson, and Richmond were not required to pay such tax, the act would be void; and yet such a discrimination in taxation would be no greater than that which is attempted to be made under the statute in question."

In Kentucky a statute provided: " Before engaging in any occupation, or selling any article named in this subdivision of article 12 of this act, the person desiring to do so shall procure a license and pay the tax thereon, as follows: . . On each real-estate agent in cities of the first, second, and third class, $25; same, in each city or town of the fourth, fifth, and sixth class, $10." The constitution provided: " § 171. . . ' the General Assem-

bly shall provide by law an annual tax, which, with other re-sources, shall be sufficient to defray the estimated expenses of the commonwealth for each fiscal year. Taxes shall be levied and collect for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws.' § 181. . . 'The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations, and professions, or a special or excise tax; and may, by general laws, delegate the power to counties, towns, cities, and other municipal corporations to impose and collect license fees on stock used for breeding purposes, on franchises, trades, oc-cupations, and professions.'" The act was held unconstitutional on the ground that it was discriminatory, and that the attempted classification was invalid. Hager *v.* Walker, 128 Ky. 1 (107 S. W. 254, 15 L. R. A. (N. S.) 195, 129 Am. St. R. 238). It was said in the opinion: "The only remaining question, and the vital one in this case, is whether or not the license fees imposed must be uniform upon the particular trade, occupation, or pro-fession that is singled out for taxation. And, confining our ob-servations to general laws enacted for the purpose of bringing revenue into the state treasury, we mean 'uniform' in the sense that precisely the same license fee must be exacted from every person within the state who is engaged in the trade, occupation, or profession that is taxed, without reference to whether he lives in a sixth-class town or a first-class city, or does business in the country or in a city. We do not believe it was contemplated by this section that the General Assembly might impose a license fee for State purposes upon blacksmiths in one county and ex-empt blacksmiths in another, or exact a license fee from phy-sicians practising in one city and exempt physicians practising in another, or to say that the auctioneer who lived in a sixth-class town should pay a license fee for carrying on his occupation and the auctioneer who lived outside the town limits should be exempt. The authority to impose these special taxes does not carry with it the right of discrimination and exemption in any class that is dealt with. . . A weighty reason, too, in favor of uniform-ity, is the further consideration that it is important that the rep-

resentatives of the people in the lawmaking department of the government shall all be directly interested in behalf of their constituents in laws involving the subject of taxation. A member of the legislature might be willing to vote a tax upon trades, occupations, and professions in other districts than his own, not having his attention specially called to its lack of equality or fairness; and so the matter might be extended to embrace any number less than a majority of the members of the legislature. But, if the constituents of the member — the people to whom he is immediately responsible — are to bear their share of the burden imposed, they would all be interested in seeing that it was fairly and equally distributed, and their desires and interests would naturally have their weight. This restrictive influence is not to be underestimated in dealing with questions of this character.

" We believe that the fundamental idea of taxation is that the burdens shall be borne equally and alike by all persons, and that no one class shall be taxed for the benefit of another, or one class be discriminated against to the advantage of another, or an exemption allowed one that is not conceded to another. If the General Assembly has power to tax real-estate agents living in cities of the first, second, third, fourth, and fifth class, and towns of the sixth class, and to exempt all who do not live or do business in these cities and towns, it has the power to further select and classify by exempting those who live in towns of the sixth class; and it would be difficult to draw the line between its power to tax and exempt, or to tax in such an unequal manner as that it would be equivalent to gross discrimination, if not exemption. . . In the constitution adopted in 1850, and that remained in effect until the adoption of the present constitution in 1891, the legislature was left free from constitutional restraint in the matter of taxation. There was no limitation whatever upon its power. Indeed, it is a curious fact that the word 'taxation' is not mentioned in the old constitution, nor does the word 'revenue' appear, except in the section requiring that 'all bills for raising revenue shall originate in the House of Representatives.' Yet in the early case of Lexington v. McQuillan, 9 Dana, 513, 35 Am. Dec. 159, decided in 1840, and under a constitution that was also silent upon this question, the court laid down the following principles that have been accepted without question as sound from

that day to this: ' When shall a tax be levied? To what amount? Shall it be a capitation or property tax? Direct or indirect? Ad valorem or specific? And what classes of property are the fittest subjects of taxation? — are all questions wisely confided by our constitution to the discretion of the legislative department. . . But in some other respects, and so far as the power of taxation may be effectual without being thus limited, it is, in our judgment, limited by some of the declared ends and principles of the fundamental law. Among these political ends and principles, equality, as far as practicable, and security of property against irresponsible power, are eminently conspicuous in our state constitution. An exact equalization of the burden of taxation is unattainable and Utopian. But still there are well-defined limits within which the practical equality of the constitution may be preserved, and which, therefore, should be deemed impassable barriers to legislative power. Taxation may not be universal; but it must be general and uniform. Thus, if a capitation tax be laid, none of the class of persons thus taxed can be constitutionally exempt upon any other ground than that of public service; and if a tax be laid on land, no appropriated land within the limits of the State can be constitutionally exempted, unless the owner be entitled to such immunity in consequence of public service. The legislature, in the plenitude of its taxing power, cannot have constitutional authority to exact from one citizen, or even one county, the entire revenue for the whole commonwealth. . . And, although there may be a discrimination in the subjects of taxation, still persons in the same class and property of the same kind must generally be subjected alike to the same common burden. This alone is taxation, according to our notion of constitutional taxation in Kentucky.' "

After quoting from a number of decisions relating to taxation for municipal purposes, the opinion proceeded. " The authorities we have cited arose in cases involving taxation for municipal purposes; but they illustrate the rule, that is firmly embodied in the principles of constitutional law that have always obtained in this State, that taxation must be uniform and equal as nearly as it is practicable to make it so; and that although the legislature may single out certain species of property, classes of persons, and trades, occupations, and professions, dealing with each class

separately, yet the burden upon every person in the class thus selected must be the same. If it is imposed upon the person, it must be equal and uniform; and so if it is graduated according to the amount of business done. The power to tax according to the volume of business done has been upheld by this court in Strater Bros. Tobacco Co. v. Com., 117 Ky. 604, 78 S. W. 871; and here again the principle of uniformity was applied, the court saying: 'We do not think the tax is lacking in the quality of uniformity. It is the same on each person or corporation which manufactures the same quantity of tobacco. The legislature had the right to impose a graduated license tax. The larger manufacturer is required to pay more than the smaller one, based upon the value of the product manufactured.' And so in Brown-Foreman Co. v. Com., 125 Ky. 402, 30 Ky. L. Rep. 793, 101 S. W. 321, where the tax was levied upon the volume of business done.

" In the case before us no account is taken of the amount of business done, nor is it pretended that the lack of uniformity and equality in the tax imposed was made to depend upon the quantity of business transacted by the real-estate agents taxed. The General Assembly, doubtless proceeding upon the idea that the real-estate agents in large cities transacted a larger business than those engaged in smaller cities, imposed a heavier tax upon them; but this tax was not fixed with reference, so far as the act shows, to the amount of business done. It may be, and probably is, true that some real-estate agents in large cities do a larger business than real-estate agents in smaller places; but it does not necessarily follow that there are not real-estate agents in fourth-class cities who do a larger business than real-estate agents in second, or third, or even first-class cities. It might also safely be said that there are many agents who do not live in, or have a place of business in, any city or town, who do a more profitable business than many agents who have their places of business in cities or towns. The vice in the law is, that, in undertaking to single out for taxation the occupation of real-estate agents, it not only taxes them in unequal amounts, depending upon the place in the State where they do business, but also exempts entirely other real-estate agents, thus plainly discriminating against real-estate agents who live or have a place of business in a city or town, in favor of those who do not live and have no place of business in a city or town.

"It is insisted for the State that a license fee or tax imposed for State purposes may be graduated alone by the population of the city or county in which such business may be conducted, or by the fact that the person from whom the fee is exacted resides or does business in one city or another, or in this county or that one; but, as we have endeavored to point out, classification cannot be made on these lines. The purpose of this opinion is not to limit or restrict in any respect the power of the legislature given to it under the section of the constitution in question, or to deny to it the right to classify, divide, and select, in any reasonable manner it chooses, trades, occupations, or professions for taxation, or to prevent it from exempting entirely any one or more trades, occupations, or professions, but only to declare that when any trade, occupation, or profession is selected for taxation, the tax levied upon it, or the license fee exacted from persons engaged in it, must be equal and uniform throughout the State, whether the tax be upon the individual or the business."

In Texas a statute provided: "In all counties, justices' precincts, towns, cities, or other subdivisions of a county where qualified voters thereof have, by a majority vote, determined that the sale of intoxicating liquors shall be prohibited therein, there is hereby levied upon all firms, persons, associations of persons, and corporations, selling at retail non-intoxicating malt liqurs, such as ' Uno,' ' Ino,' ' Frosty,' ' Tintop,' and ' Teetotle,' and all other such liquors, an annual State tax of $2,000, and counties, also incorporated cities and towns, where such sales are made, may each levy an annual tax of not exceeding $1,000 upon all such persons, firms, or corporations." The constitution provided: "All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax." Also: "All free men, when they form a social compact, have equal rights; and no man, or set of men, is entitled to exclusive separate public emoluments or privileges but in consideration of public services." The statute was held unconstitutional (Ex parte Woods, 52 Tex. Crim. 575, 108 S. W. 1171, 16 L. R. A. (N. S.) 450, 124 Am. St. R. 1107), because, among other reasons assigned, the tax thereby imposed was not "an equal and uniform tax throughout the limits of the State." The discriminative character of the statute was thus stated in the opin-

ion :. "Under this law, a citizen living in the city of Dallas may sell Uno, Ino, etc., to all persons that are willing to buy, without let or hindrance; whereas in the neighboring town of Lancaster he will be subject. to a tax, for State purposes, of $2,000. Under this law, in the county of Johnson, if one desires to sell these articles, he must pay a tax of at least $2,000 per annum, and a tax that may be $4,000 per year; whereas in the neighboring county of Tarrant he may sell it without tax. Suppose we substitute in the law for the words 'Ino, Uno,' etc., the words 'lumber, shingles, and building materials.' We would then have a tax levied in prohibition territory, upon commerce on these useful articles in Johnson county, in the. sum of $4,000 a year; whereas in the adjoining county, among people wholly homogeneous, the merchants pay practically no tax at all." On the general subject see also: State ex rel. Wyatt v. Ashbrook, 154 Mo. 375 (55 S. W. 627, 48 L. R. A. 265, 77 Am. St. R. 765) ; Bessette v. People, 193 Ill. 334 (62 N. E. 215, 56 L. R. A. 558).

Of course the decisions above stated from other jurisdictions are not precedents that are binding upon this court; but they state sound principles of law which are helpful in construing and applying the constitution of this State. In the light of all that has been said, the true meaning of the clause of the constitution applicable in this case is that all taxation should be uniform upon the same class of subjects, which implies uniformity throughout the territorial limits of the authority levying the tax; and that all taxation upon property should be at a uniform rate and ad valorem throughout the territorial limits of the authority levying the tax. Speaking more specifically, it may be stated that the clause permits classification of occupations for the purposes of taxation, permits different amounts to be prescribed for each class, or permits taxation upon some classes of business while other classes are omitted; but in every instance where a class of business is taxed, the tax must fall uniformly upon every member of that class throughout the territorial limits of the authority levying the tax, and if it fails to do so the tax becomes sectional and must fail for the want of uniformity. Where the taxing authority is the State and the State classifies an occupation as a subject for excise tax, the tax must operate uniformly upon every member of that class wherever found with-

in the territorial limits of the State; and a tax will fail for want of uniformity if it is made to apply only in cities and towns, thus leaving out those portions of the State not included in cities and towns. If the taxing authority is a city, or county, or any other subdivision of the State authorized to levy an occupation tax, the tax must be uniform throughout the territorial limits of such taxing authority.

The decision in *Adams Motor Co.* v. *Cler,* 149 *Ga.* 818, 820, had reference to section 12 of the general tax act of 1918, providing for the levy of taxes by the State for support of the government. The particular provision of the act in question was: "Upon every agent of, and upon every dealer in, and upon every person soliciting orders for the sale of automobiles, the sum set out below, viz.: In each county for each make of such vehicle only one such tax for such make for each agency to be taxed in any one county. Any agency having paid such tax to be allowed any number of employees within the county wherein such tax has been paid, free from such liabilities. Provided, that any person, firm, or corporation paying this tax shall be permitted to resell any automobile or other vehicle taken in exchange for automobiles, without the payment of additional tax. In each county with a population of less than 20,000, $27.50. In each county with a population of between 20,000 and 30,000, $55.00. In each county with a population of between 30,000 and 50,000, $82.50. In each county with a population of between 50,000 and 75,000, $110.00. In each county with a population of between 75,000 and 100,000, $165.00. In each county with a population of between 100,000 and 150,000, $220.00. In each county with a population exceeding 150,000, $275.00." This provision of the act was alleged to be unconstitutional, because it was violative of (1) the due-process and equal-protection clauses of the 14th amendment to the constitution of the United States and the constitution of the State of Georgia, and (2) the uniformity-taxation clause of the constitution of the State of Georgia (art. 7, sec. 2, par. 1, Civil Code, § 6553). The grounds upon which it was alleged that the statute thus violated the constitution were stated as follows: "(a) It makes an arbitrary, discriminatory, and unreasonable classification between dealers who deal in one make of automobiles and dealers who sell more than one make, without reference

to the value of the automobiles sold, the number of automobiles sold, the gross or net profits received therefrom. (b) It makes an arbitrary, discriminatory, and unreasonable classification in favor of persons who take automobiles in exchange from others and resell them. (c) It makes an arbitrary, unreasonable, irregular, and ununiform classification, in providing a tax of only $27.50 in counties of a smaller population than 20,000 inhabitants, $55.00 in counties of a smaller population than 30,000, $82.50 in counties with a population of less than 50,000, $110.00 in counties with a population less than 75,000 and $165.00 in counties of less than 100,000." It was held: "Subsection 12 of section 2 of the general tax act passed by the General Assembly of Georgia in the year 1918 (Acts 1918, pp. 43-83), is not unconstitutional and invalid because the classification of the dealers in automobiles there made was arbitrary, discriminatory, or unreasonable." In the course of the opinion it was said: "The soundness of the criticisms upon this act depend upon whether the section in question makes an arbitrary and unreasonable classification of dealers in automobiles subject to the tax imposed by this section. After careful consideration of the subject of this inquiry it does not seem to us that the legislature, in exercising its right to make a classification for the purpose of imposing a tax like that in question, has acted arbitrarily and unreasonably." The rest of the opinion consisted in reasoning to support the proposition last quoted, and concluded with the statement: "The act in question not being invalid for any of the reasons set forth above, it follows that it is not in violation of the due-process clause of the State and Federal constitutions." The opinion did not expressly mention or construe article 7, section 2, paragraph 1, of the constitution. It is unfortunate that the *Adams* case was not projected more plainly upon a construction of the above-mentioned provision of the constitution. But the statute involved in that case was so different from the statute in this case that the decision in that case does not require a decision in this case that the act under consideration is constitutional. That statute, while making classifications, based on population of different counties, that were held to be reasonable, nevertheless extended to every particle of territory in the State; while the classification now under discussion applies to territory only in towns and cities,

and excludes from its operation the great body of the State's territory outside of incorporate limits, without any basis for classification whatever except territory. That kind of classification is purely territorial, and amounts to no classification within the meaning of the constitution.